FARMERS' & MERCHANTS' NAT. BANK v. SMITH.

(Circuit Court of Appeals, Eighth Circuit. November 16, 1896.)

No. 758.

1. PLEADING—SEVERAL CAUSES OF ACTION—SEPARATE COUNTS.
  If a plaintiff intends to demand a judgment on different grounds, he should state the facts constituting the several causes of action in separate counts, so as to advise the court and the opposite party of his intention, especially when the Code governing procedure requires each of several causes of action to be separately stated and numbered. If this is not done, and the facts constituting a cause of action are stated in a single count, it may well be concluded that the pleader intended to rely upon a single ground of recovery, and he should be confined to the cause of action which, upon a fair construction of the complaint, he appears to have selected.

2. NATIONAL BANKS—DEALINGS WITH CASHIER—ULTRA VIRES TRANSACTIONS.
  One who deals with the cashier of a national bank, professing to act on its behalf, in a transaction known to be outside the legitimate sphere of its operations, has no right to presume that the acts of the cashier have been sanc-

tioned by the board of directors or other governing body, as no act done by an officer of an incorporated company in furtherance of a business venture, which is in excess of the corporate powers, can be said to be an act which is within the scope of the customary powers of such officer.

3. SAME—SALE OF BONDS ON COMMISSION.
It is not within the powers of a national bank to engage in the business of selling mortgage bonds on commission.

4. SAME.
Plaintiff bought a bond and mortgage from the defendant national bank, through its agents, knowing, or having reason to believe, that the bank was acting only as a broker. After the purchase he accepted a guaranty against loss through defects in the title to the mortgaged premises, executed by the cashier of the bank, as such, making no inquiry as to the cashier's authority, but relying on his acting within the apparent scope of his duties. The bank received none of the proceeds of the sale, and profited in no way by the transaction. *Held*, that the bank was not bound by the alleged guaranty, nor estopped to deny the cashier's authority to execute it.

In Error to the Circuit Court of the United States for the District of Nebraska.

This suit was brought by Edward A. Smith, now deceased, against the Farmers' & Merchants' National Bank of Fremont, Neb., the plaintiff in error, on March 25, 1893, in the circuit court of the United States for the district of Nebraska. The plaintiff died on November 26, 1895, and thereupon the suit was revived in the name of Herbert K. Smith, his executor, who is the present defendant in error. The petition on which the case was tried contained, in substance, the following allegations: That on July 2, 1888, C. H. Toncray was the cashier of the Farmers' & Merchants' National Bank of Fremont, Neb.; that on said day Stephen H. Elwood and Lurta Elwood, his wife, executed and delivered to said Toncray a bond in the sum of $8,000, with semiannual interest coupons thereto attached, and to secure the payment of the same also executed and delivered to said Toncray a mortgage on certain real estate situated in Holt county, Neb.; that said bond and mortgage were thus delivered either as security for a debt due from said Elwood to said bank, or in consequence of a purchase of the bond by said bank, or because the bank was at that time engaged in the business of negotiating and selling such mortgage bonds to third parties for a commission in that behalf paid to it; that said bond and mortgage were delivered for one or the other of the purposes last stated, but that the plaintiff was unable to say with certainty for which of said purposes they were so delivered. In addition to the foregoing averments, the petition contained the following allegations:

"(4) That thereupon the said defendant bank, being the owner and holder of, or having a valuable interest in, the said coupon bond and mortgage, did, either by itself or through its cashier, the said C. H. Toncray, * * * offer the said coupon bond, together with all the coupons attached thereto, for sale and discount through Walker & Co., the brokers and agents of said defendant bank in New Haven, Connecticut; and with the knowledge and authority of the said defendant bank and the said C. H. Toncray, the said Walker & Co. offered the said coupon bond, together with all the coupons attached thereto, on August 1, 1888, to one Isaac E. Smith, a citizen of the state of New York, and a resident of the city of New York, * * * with the condition that the title to the land on which the said mortgage was given to secure the payment of said coupon bond was perfect, and the abstract and deed all right, and that the said mortgage to secure the payment of the said coupon bond and coupons was a first mortgage on said property; that, relying thereon, and in good faith, and not knowing otherwise, the said Isaac E. Smith purchased the said coupon bond and coupons thereto attached, together with the mortgage securing the same, and paid therefor the sum of $8,000, all of which was, on said August 1, 1888, received by and paid to the said defendant bank, and all of which the said defendant appropriated and retained for its own use, behoof, and benefit.

"(5) That thereafter, and shortly prior to the 17th day of November, 1888, the said purchaser, Isaac E. Smith, discovered that the said mortgage securing the said coupon bond and coupons so purchased by said Isaac E. Smith was not a first mortgage on said property, and that the abstract and title to said property was not all right, but that the said property had prior mortgages and incumbrances for more than its full value, and thereupon the said Isaac E. Smith, the purchaser of said coupon bond and coupons, demanded that the said bank should make his said security and title good, as the same had been represented when he, the said Isaac E. Smith, purchased and paid for said coupon bond and coupons, or that the said defendant bank should take back the said coupon bond and coupons, and return to said Isaac E. Smith his purchase money; whereupon it was proposed that, if the said Isaac E. Smith's title could not be perfected, that there should be prepared for and given to him a guaranty for all loss that might befall him on account of the imperfection of the title, and to make sure of his, the said Isaac E. Smith's not throwing back the said coupon bond and coupons; and thereupon, and in answer to said proposition, and to avoid the necessity of taking back the said coupon bond, and to continue the said loan which it, the said defendant bank, thereby obtained from said Isaac E. Smith, the said defendant bank did, for valuable consideration, execute and deliver to the said Isaac E. Smith a certain written guaranty in the words and figures as follows, to wit:

" 'For a valuable consideration we hereby guarantee the payment of interest and principal upon a certain loan for $8,000 made to Stephen H. Elwood and Gusta (Lurta) Elwood, of date July 1, 1888, due July 1, 1893, secured by mortgage upon land in Holt county, Nebraska. Dated Fremont, Nebraska, November 17, 1888. Farmers' & Merchants' National Bank,

" 'C. H. Toncray, Cashier.

" 'C. H. Toncray.'

"(6) And the plaintiff says that the said loan for $8,000 made to said Stephen H. and Gusta (Lurta) Elwood, referred to in said guaranty was the same one so as aforesaid purchased and held by the said Isaac E. Smith, and that thereupon, and relying upon the said guaranty, the said Isaac E. Smith held and retained the said coupon bond, and did not turn the same back to the said defendant bank, or hold the said defendant bank liable under its said representations and statements at the time of the purchase of said coupon bond as hereinbefore stated; but this plaintiff says that the said coupon bond of the said Elwood and wife has long since matured by reason of the terms thereof, for inasmuch as default has been made in the payment of the said interest coupons as follows, to wit, the interest coupon for $300 which matured January 1, 1891. * * *

"(7) And this plaintiff says that the said Isaac E. Smith made demand for the payment of said interest and the said coupon bond, and that no part thereof has been paid, and the whole thereof, to wit, $8,000, with interest thereon from July 1, 1890, at the rate of 7½ per cent. per annum, remains past due and unpaid; that the property included in the said mortgage given to secure the said mortgage bond for $8,000 is worthless, and covered by liens prior to the mortgage securing the same far in excess of its value; that the said Stephen H. Elwood and his said wife are financially worthless and insolvent. and that any action at law or in equity upon the said mortgage and the coupon bond would be without any avail, and would result only in the accumulation of court costs.

"(8) This plaintiff further says that on the ——— day of April. 1891, the said Isaac E. Smith died testate, a resident and citizen of the city, county, and state of New York, aforesaid, and that on said ——— day of April, 1891, his last will and testament was duly admitted to probate, and this plaintiff was therein and thereby made the sole legatee and devisee of the said Isaac E. Smith, and his executor. * * *

"(9) And, further, this plaintiff says that he has demanded of the said defendant that it, the said defendant, make its said guaranty good, and that it, the said defendant, should pay the interest called for by said mortgage bond so as aforesaid purchased by the said Isaac E. Smith, and that it, the said defendant should pay the taxes, liens, and other assessments on the said prop-

erty covered by said mortgage, but the said defendant has failed to pay the same, or any part thereof; that this plaintiff has also demanded that said defendant should pay the principal and interest of the said mortgage bond so as aforesaid held by this plaintiff, as in its guaranty the said defendant agreed and promised, but the said defendant has failed [to pay] the same, or any part thereof, to this plaintiff's damage in the sum of $8,000, with interest thereon at the rate of seven and one-half per cent. per annum from July 1, 1890, until paid, no part of which has been paid. Wherefore this plaintiff prays judgment against the said defendant for the sum of $8,000, with interest thereon at the rate of seven and one-half per cent. per annum, payable semiannually, from July 1, 1890, until paid. * * *"

The defendant bank, in its answer, denied all of the aforesaid allegations of the petition. It also averred that C. H. Toncray had no authority to execute the alleged guaranty.

The facts developed at the trial were substantially as follows: For some years prior to July 1, 1888, the defendant bank, through its agent, the firm of Walker & Co., of New Haven, Conn., had been engaged quite extensively in the business of negotiating and selling mortgages on lands located in the state of Nebraska. The commissions received by it for such services had amounted for several years to the sum of $2,000 annually. To enable it to transact such business, the defendant bank had caused printed forms of coupon bonds and mortgages to be prepared, which contained on the face thereof a statement that they were "negotiated by the Farmers' & Merchants' National Bank, Fremont, Nebraska." When the bank undertook the negotiation of a bond and mortgage for a customer, both instruments were prepared on such printed forms, and both were made payable to C. H. Toncray individually, who was at the time the cashier of the defendant bank. On or about July 1, 1888, the said Toncray requested Stephen H. Elwood to execute a bond and mortgage in his favor in the sum of $8,000, to be used as collateral to enable him, the said Toncray, to raise money for his individual use and benefit. In compliance with such request, Elwood and wife executed the bond and mortgage now in controversy, and delivered it to C. H. Toncray, the understanding being that the mortgage would be taken up by Toncray in a short time, and returned to Elwood, the mortgagor. The bond and mortgage so obtained were prepared on the printed forms then in use by the defendant bank, and both were made out in favor of C. H. Toncray individually as payee and mortgagee. They were subsequently transmitted by mail to Walker & Co., of New Haven, Conn., to be there negotiated, and were sold by said firm to Isaac E. Smith, of the city of New York, about August 1, 1888, for the sum of $7,590. They were so sold on terms and conditions which are stated above with substantial accuracy in the plaintiff's petition. When the sale in question was made, Walker & Co. supposed that they had been employed by the defendant bank, as theretofore, to negotiate a sale of the bond and mortgage. They were not advised of the agreement between Toncray and Elwood, nor of the fact that the sale was to be made for the benefit of Toncray. The money which Walker & Co. received for the bond and mortgage was paid to the defendant bank, but when so paid it came within the control of C. H. Toncray as cashier, and was by him forthwith placed to his individual credit on the books of the bank, and was afterwards paid out for his own benefit. No part of the sum realized on the sale of the security in question was used by the bank for its own benefit, and no commission was received by the bank for negotiating the sale. After the sale was consummated, Walker & Co. discovered that the title to the mortgaged property was not good, as it had been represented to them to be, but that the same was defective by reason of the execution of prior mortgages which were unpaid. In October and November, 1888, they accordingly addressed letters to the defendant bank, in whose behalf they supposed they had been acting, requesting the bank to execute a guaranty of the loan before they disclosed to the purchaser of the mortgage the aforesaid defects in the title to the mortgaged property. In compliance with such suggestion or request, C. H. Toncray executed the written guaranty of the loan which is set out above in the plaintiff's petition. It appears that all the correspondence between Walker & Co. and the defendant bank with reference to the trans-

actions aforesaid was conducted on the part of the bank by C. H. Toncray, who had charge of the bank's correspondence, and of its daily business affairs. No other officer of the bank had actual knowledge of any of the aforesaid transactions with reference to the Elwood bond and mortgage, but remained ignorant thereof until shortly before the present suit was instituted. Elwood and wife were and are insolvent, and on July 1, 1888, the land covered by the mortgage in controversy was incumbered by prior mortgages for more than it was worth. Isaac E. Smith died in the year 1891, leaving his son, Edward E. Smith, the original plaintiff, who has since died, his sole legatee and devisee.

At the conclusion of the testimony the trial court gave a peremptory instruction directing the jury to return a verdict in favor of the plaintiff below for the amount of money which had been paid by Isaac E. Smith to Walker & Co., with interest thereon from the date of such payment at the rate of 7 per cent. per annum. The defendant below sued out a writ of error, and has assigned for error the giving of said instruction.

E. F. Gray, for plaintiff in error.
Charles Offutt, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

A preliminary question has been raised in this case respecting the construction which should be placed on the petition on which the case was tried in the circuit court. It is insisted in behalf of the defendant in error, who was the plaintiff below, that the averments of the petition are sufficient to warrant a recovery either for money had and received or for damages on account of fraud and deceit practiced in the sale of the mortgage bond, or for damages for the breach of the written agreement alleged to have been made by the defendant bank to guaranty the payment of the bond. It is not claimed, as we understand, that the three causes of action aforesaid are stated separately in as many different counts, as the Code of Nebraska requires (Consol. St. Neb. 1891, § 4633), but it is insisted that, while the petition contains but one count, it has been so deftly drawn that, at the plaintiff's option, he is entitled to demand a judgment on either one of the three grounds above stated. We are not able to assent to that view. It is manifest that the petition, the material parts of which are quoted in the statement, does not state a good cause of action for fraud and deceit in the sale of property, for the reason that it contains no allegation to the effect that the defendant bank, for the purpose of effecting a sale of the mortgage bond, falsely represented the title to the mortgaged premises to be free and clear from incumbrances, knowing such representation to be untrue. There is no such averment in the petition. It is not alleged, either directly or indirectly, that the defendant bank, by fraudulent representations or deceitful conduct, induced the plaintiff's testator to become a purchaser of the security. In short, if it be conceded that the record discloses facts that might warrant a recovery of damages for fraud and deceit, such facts are found in the evidence adduced at the trial, and not in the averments of the petition. It follows, therefore, that the petition is insufficient to warrant a recovery on the ground last stated.

In view of the averments of the petition, we also think that the plaintiff was not entitled to recover thereunder on the ground that the sale complained of was made under circumstances or upon conditions which entitled his testator to rescind the contract of sale, and sue for money had and received. If the plaintiff below intended to rest his right to recover on that ground, he should have offered to surrender the bond and mortgage for cancellation; but no such tender was made, either in the petition or during the progress of the trial. The bond and mortgage were not void. Both instruments bore the genuine signatures of Stephen H. Elwood and wife, and the title to the mortgaged premises seems to have been well vested in the mortgagors, subject only to certain incumbrances which they failed to discharge. It also appears from the testimony that the interest coupons of the bond, which matured prior to January 1, 1891, were paid to the plaintiff's testator. Under these circumstances, it must be held that it was the duty of the plaintiff below to return, or offer to return, the mortgage bond, if he intended to insist upon the right to recover the consideration paid therefor, either on the theory that the conditions under which the money was paid had not been fulfilled, or that he had been induced to part with his money through fraud, or while laboring under a mistake of fact. While the petition is defective in the respects above indicated, if it is regarded either as a suit ex delicto to recover damages for fraud and deceit, or ex contractu for money had and received, yet no difficulty whatever is encountered in construing it as an action brought to recover damages for a breach of the written guaranty which is set out in the petition. The averments in the pleading which precede the statement of the terms of the guaranty were evidently inserted for two purposes: First, for the purpose of showing that there was an adequate consideration for the execution of the alleged guaranty by the defendant bank; and, second, for the purpose of showing that C. H. Toncray, who executed the same, had authority to bind the bank. Looking at the pleading as a whole, we have no doubt that it was framed solely with a view of recovering upon the guaranty, and we think it should be so construed. If a plaintiff intends to demand a judgment on different grounds, he should state the facts constituting the several causes of action in separate counts, so as to advise the court and the opposite party of his intention. The Code of the state where this cause originated provides that, "where a petition contains more than one cause of action, each shall be separately stated and numbered." Section 4633, supra. When this provision of the Code is disregarded, and the facts constituting a cause of action are stated in a single count, it may well be concluded that the pleader intended to rely upon a single ground of recovery, and in such cases he should be confined to the cause of action which, upon a fair construction of the complaint, he appears to have selected.

Treating the suit, then, as an action to enforce the contract of guaranty, we turn to consider whether the trial court, on the state of facts disclosed by the testimony, properly instructed the jury that the plaintiff was entitled to recover. The guaranty was signed in behalf of the bank by C. H. Toncray, cashier, to secure the payment of

a mortgage bond which he had caused to be executed and negotiated for his individual use and benefit. It was so executed without the knowledge or sanction of any officer of the bank other than the cashier, and without authority to execute an obligation of that character for such a purpose. In view of the fact that the guaranty was executed by the cashier without any actual authority, the first question which deserves consideration is whether it is binding, in any event, upon the defendant bank. Counsel for the defendant in error contend, in substance, that the execution of the guaranty was within the apparent powers of the cashier, and that the defendant bank is estopped from denying his authority to execute it, provided the guaranty was signed and delivered in behalf of the bank for a sufficient consideration. With reference to this contention it may be said that, so long as a national bank confines itself to the kind of business which it is authorized to transact, one who has dealings with it is entitled to presume, unless he has notice to the contrary, that its cashier is empowered to draw and certify checks and drafts, to transfer by indorsement commercial paper of all kinds which is in the bank's possession, to guaranty the payment of notes and bills which the bank sells or rediscounts for its own benefit, and to do many other acts which, for present purposes, need not be specially enumerated. These are acts which cashiers customarily do and perform, and persons dealing with them without notice of any limitation of their powers may properly assume without inquiry that they have the right to do such acts and to exercise such powers. Merchants' Bank v. State Bank, 10 Wall. 604, 650; People's Bank v. National Bank, 101 U. S. 181; Fleckner v. Bank, 8 Wheat. 338, 356; Wild v. Bank, 3 Mason, 505, Fed. Cas. No. 17,646; Cooke v. Bank, 52 N. Y. 96, 115; Farmers' & Mechanics' Bank v. Butchers' & Drovers' Bank, 16 N. Y. 125, 133, 134; Houghton v. Bank, 26 Wis., 663; Thomp. Corp. §§ 4789–4791, 4815. But the doctrine aforesaid has no application in those cases where a bank is known to be carrying on a kind of business which it is not authorized to transact. If a person enters into a business transaction with a national bank, or any other corporation, he is bound to take notice of the nature and extent of its corporate powers, and of the purpose for which it was organized; and if the transaction in question is in excess of those powers he has no right to presume without inquiry that a guaranty executed by its cashier, or by any other officer, in the course of such transaction, is executed with the sanction and approval of the corporation. No act done by an officer of an incorporated company in furtherance of a business venture which is outside of the company's corporate powers can be said to be an act which is within the scope of the apparent or customary powers of such officer, and to be binding upon the corporation for that reason. A bank may well be held responsible to a third party for an act done by its cashier in the prosecution of the legitimate business of the bank which was within the apparent scope of his powers, although it was in fact unauthorized by the corporation. A bank may also be held responsible to a third party for a wrongful and unauthorized act of its cashier which has the appearance of being within the scope of his ordinary duties, and

not ultra vires, although by reason of some extrinsic fact, such as the purpose for which the act is done, which is unknown to the party with whom he deals, the act done is in excess of the legitimate functions of the corporation. Farmers' & Merchants' Bank v. Butchers' & Drovers' Bank, 16 N. Y. 125, 130; Houghton v. Bank, 26 Wis. 663; Thomp. Corp. § 4806. But when the transaction in which a bank is for the time being engaged is known to the person dealing with it to be outside of the legitimate sphere of its operations, no reason is perceived why a person dealing with the cashier under such circumstances should be allowed to indulge in any presumptions as to the cashier's authority. He is advised by the very nature of the transaction that all acts done and performed in relation thereto are beyond the power of the corporation, and, if he expects to hold the corporation liable on any contract or obligation entered into by the cashier or other officer in the course of that transaction, he should at least see to it that such contract or obligation is approved by the board of directors or other governing body. Bank v. Graham, 79 Pa. St. 106; Moores v. Bank, 111 U. S. 156, 4 Sup. Ct. 345; Thomp. Corp. §§ 4754, 4755.

In the case in hand there was evidence which tended to prove, even if it did not conclusively show, that Isaac E. Smith, the original plaintiff's testator, when he purchased the mortgage bond in controversy, was well aware that it did not belong to the defendant bank, but that it had simply undertaken to negotiate a sale of the same for a commission in that behalf paid to it by the mortgagor. In other words, there was evidence tending to show that he knew that the bank was engaged in the brokerage business. Walker & Co., who acted ostensibly as agents for the defendant bank in negotiating the sale of the mortgage bond, evidently understood that it did not belong to the bank. The members of that firm, in consequence of their prior dealings with the bank, were advised that the bank, in offering the bond for sale, was acting solely in the capacity of a broker. They do not claim, and there is no evidence in the record which tends to show, that they represented to the purchaser of the bond that it was the property of the bank, or that the bank was selling it for its own account; it does appear, however, that Walker & Co. exhibited to him, prior to the sale, an application for the loan in question, dated July 7, 1888, made on a printed form, which was signed by Elwood and wife, the mortgagors, and was verified before C. H. Toncray as a notary public. In addition to this request for the loan, which was made by the mortgagors, the purchaser also had before him the bond and mortgage, which were executed on printed forms, and both of which bore the following statement: "Negotiated by the Farmers' & Merchants' National Bank, Fremont, Nebraska." Under these circumstances, it is necessary to conclude that when the plaintiff's testator purchased the security in question, he was well aware that it did not belong to the bank, and that the bank was engaged in the business of selling such securities on commission. From the nature of the transaction we do not see that any other inference could fairly be drawn. The representation contained on the face of the mortgage that it was

"negotiated by the Farmers' & Merchants' National Bank," and the other circumstances to which we have adverted, would naturally lead any one to infer that in the particular transaction the bank was acting in the capacity of a broker, and that it had probably become engaged, quite extensively, in that line of business. Such, indeed, was the fact. For several years the bank had made a practice of selling farm mortgages on commission, and from some passages found in the correspondence between Toncray and Walker & Co. it would seem that the deceased, Isaac E. Smith, had been one of its best customers.

Concerning the power of the defendant bank to engage in the business of selling mortgage bonds on commission, little need be said, because it does not seem to be claimed that such a power could be lawfully exercised by the bank. The brokerage business is entirely distinct from the business of banking which it was authorized to transact. If a national bank can lawfully act as a broker in selling farm mortgages for a commission, no reason is perceived why it may not act in the same capacity in selling any other species of property, real or personal. The national bank act does not, in terms, or by necessary implication, authorize national banks to act as brokers in negotiating the sale of securities, and it is generally agreed that they cannot lawfully engage in such business. Weckler v. Bank, 42 Md. 581; Wiley v. Bank, 47 Vt. 546; First Nat. Bank of Lyons v. Ocean Nat. Bank, 60 N. Y. 278; Talmage v. Pell, 7 N. Y. 328.

The case disclosed by the record, then, is briefly as follows: The plaintiff's testator bought the mortgage bond in controversy from the defendant bank through its ostensible agents, Walker & Co., either knowing, or having sufficient reason to believe, that the bank was acting merely in the capacity of a broker for the mortgagors. He was affected with knowledge that the bank could not lawfully act in that capacity, and that the transaction in question was ultra vires. After the purchase was made, and the money was paid, he accepted a guaranty of the loan, executed by C. H. Toncray as cashier, to guard against a loss which might be sustained owing to the existence of prior incumbrances on the mortgaged premises. The cashier acted wholly without authority in executing the guaranty, and the plaintiff's testator made no inquiry as to his authority, but relied on the assumption that the act was within the scope of his ordinary duties. The bank received no part of the proceeds of the sale of the mortgage bond, and has not profited to any extent by the unauthorized act of its cashier. In view of the foregoing considerations, we are of opinion that the defendant bank is not bound by the alleged guaranty which the cashier assumed to execute in its name, and that the bank is not estopped from denying the cashier's authority to execute it. When the plaintiff's testator accepted the guaranty, he was not dealing with the bank under such circumstances as warranted him in assuming without inquiry that it was executed and delivered with the sanction and approval of the board of directors, but he was dealing with it under conditions which conveyed notice that, if the bank had in fact undertaken to dispose of the security in question, its action in that regard was in excess of its lawful powers.

In the argument of counsel for the defendant in error, considerable space is devoted to the discussion of the question whether, by virtue of what had been done by C. H. Toncray, ostensibly as cashier, prior to November 17, 1888, when the guaranty was signed, the bank had incurred a liability of any kind to the plaintiff's testator which would serve as a consideration for the guaranty, provided it was executed with the knowledge and approval of the board of directors; but, inasmuch as we are satisfied that the guaranty would not be binding upon the bank even if such a liability had been incurred, no discussion of the question last suggested is deemed necessary or advisable. Even if the bank had incurred a liability to the purchaser of the mortgage bond through the wrongful act of its cashier, yet we would not be able to admit that it was within the scope of the cashier's ordinary duties to compromise the liability, without the knowledge or sanction of the board of directors, by executing an agreement in the name of the bank to guaranty the payment of the bond. Bank v. Armstrong, 152 U. S. 346, 14 Sup. Ct. 572. The judgment of the circuit court is accordingly reversed, and the case is remanded for a new trial, with leave to the plaintiff below to amend his petition if he shall so desire.