FIDELITY & DEPOSIT COMPANY OF MARYLAND v. NATIONAL BANK
OF COMMERCE OF DALLAS ET AL.

Decided December 21, 1907.

**1.—Practice—Conclusions of Law.**

Where a case is tried on an agreed statement of facts, without the intervention of a jury, the filing by the trial court of a general conclusion of law on said agreed facts, and his refusal to file specific findings on the questions of law involved, is not reversible error.

**2.—Banking—Commercial Check—Definition.**

A check is a draft or order upon a bank or banking house, purporting to be drawn upon a deposit of funds for the payment at all events of a certain sum of money, to a certain person therein named, or to him or his order, or to bearer, and payable instantly on demand. Instrument sued on, considered, and held not to be a check, but an undertaking of indemnity.

**3.—Same—Certified Check.**

The certification of a check by a bank is an appropriation of the funds of the drawer to that extent, to the holder of the check, and, without special authority conferred on him, an officer of a bank has no authority to certify any but commercial checks.

**4.—Same—National Banks—Suretyship—Ultra Vires.**

It is not within the corporate power of a national bank to become surety or guarantor for another or to bind itself to answer for the debt or default of another, and such act on the part of the bank is ultra vires. This, however, does not apply to the endorsement or guaranty of commercial paper which the bank may rediscount or dispose of in the ordinary course of business.

**5.—Bank—Guaranty—Ultra Vires—Defense.**

A national bank, being without authority to execute a contract of indemnity, is not estopped to interpose the doctrine of ultra vires when sued thereon. Such contract is a nullity.

**6.—Banking—Officer—Liability.**

Where the officer of a bank executes a void contract in his capacity as such officer and with a view of binding only the bank, he cannot be held personally liable thereon, in the absence of any false or fraudulent representations by him.

Appeal from the District Court of Dallas County. Tried below before Hon. Richard Morgan.

*P. M. Milner, A. P. Wozencraft* and *A. H. Graham,* for appellant. —The court erred in holding that the contract sued on was, and in treating it as, a surety or indemnity obligation on the part of the National Bank of Commerce, indemnifying applicant to the extent of $10,159 against liability and loss from the default of Sonnefield & Emmins, contractors, in the performance of their contract with the First National Bank Building Company, Limited. Durrell v. Farwell, 88 Texas, 98; Anderson's Dictionary of Law, "Surety;" 27 Am. and Eng. Encyc. of Law, 431, 433; Brandt on Suretyship, 1, 21; 2 Dan. Neg. Inst., 1569; Bushnell v. Chautauqua, 74 N. Y., 290.

The court erred in not holding that under the law and the evidence as shown in the record, the contract, or paper in writing sued

on, was, by the certification, or acceptance, of the National Bank of Commerce, made a valid contract and obligation on the part of said bank to pay applicant the amount therein named, upon the terms stated; and in not rendering judgment for plaintiff against said bank for the amount of said obligation. Daniel v. Henry, 30 Texas, 27; Smith v. Brown, 66 Texas, 545; Kildare Lumber Co. v. Atlanta Bank, 91 Texas, 101; 5136 U. S. Rev. Stats.; 5208 U. S. St., 5 Fed. St. Ann., sec. 13, p. 145 (note); 2 Dan. Neg. Inst., 1603; Bushnell v. Chautauqua Bank, 74 N. Y., 290; Credit Co. v. Howe, 54 Conn., 387; 8 Atl. Rep., 472; Rockefeller v. Merritt, 35 L. R. A., 633, 638; Ogden v. Saunders, 25 U. S., 12 Wheat, 341; Metropolitan Exhib. Co. v. Ewing, 7 L. R. A., 381; Crawford v. Oman & S. Stone Co., 12 L. R. A., 375; Thompson v. St. Nicholas Bank, 113 N. Y., 325; Remy v. Olds, 21 L. R. A., 645; Sykes v. First Nat. Bank, 2 S. D., 242; 49 N. W. Rep., 1058.

The court erred in holding and adjudging that the act of appellee, the National Bank of Commerce, in endorsing the order drawn upon it, and which is the contract sued on, was ultra vires absolute and void. 2 Morse Bank and Banking, 745, 735; Ohio and Miss. Ry. Co. v. McCarty, 96 U. S., 258, 24 Law. Ed., 693; State Board of A. v. Citizens St. Ry. Co., 47 Ind., 407; Central Transp. Co. v. Pullman, 139 U. S., 24, note and authorities cited on p. 57, Law Ed. 35.

The court erred in holding and adjudging that the bank was not, under the circumstances of this case, estopped to plead ultra vires. Texas Western Ry. v. Gentry, 69 Texas, 632; First Nat. Bank v. Greenville Oil Co., 60 S. W. Rep., 828; Curlin v. Hendricks, 35 Texas, 244; Monroe v. Arledge, 23 Texas, 479; James v. Fulcrod, 5 Texas, 519; 2 Morse on Banks, 745, 735; State Bd. of Ag. v. Citizens St. Ry. Co., 47 Ind., 407; Seeber v. Commercial Nat. Bank, 77 Fed. Rep., 957.

The court erred in holding and adjudging that J. B. Adoue, appellee, was not individually liable on the contract sued on. Kinkler v. Junica, 84 Texas, 119; Seal v. Baker, 70 Texas, 286; 3 Clark & Marsh. Priv. Corp., sec. 745; 1 Am. and Eng. Encyc. of Law, 1124.

*Finley, Knight & Harris,* for appellees.

TALBOT, ASSOCIATE JUSTICE.—The Fidelity & Deposit Company of Maryland brought this suit against the National Bank of Commerce of Dallas, J. B. Adoue and W. Illingworth. The bank is sought to be made liable upon the following instrument in writing, which is made the basis of the suit:

"The National Bank of Commerce,
                    "Dallas, Texas, June 10, 1901.
"$10,159.00.
"The National Bank of Commerce, of Dallas, Texas.
"On failure on our part to comply with a certain contract existing between the First National Bank Building Company, Limited, of Shreveport, La., and ourselves, in which we agree to erect a

certain building for them in Shreveport, La., and the further condition that the Fidelity & Deposit Company, of Baltimore City, Maryland, who have become our surety in said bond, have become legally liable on said bond, then and in that event pay to said Fidelity & Deposit Company any amount they may legally have to pay under their said bond not exceeding the sum of $10,159.00, Ten Thousand One Hundred and Fifty-nine Dollars.

"Otherwise this cheque to be void and held for naught.

"(Signed) Sonnefield & Emmins.

"No. 450.

"Certified as per terms and conditions herein expressed.

"(Signed) J. B. Adoue, Prest.
"J. D. Estes, Cashier."

J. B. Adoue is sought to be made liable upon the ground that in certifying the instrument sued on "as per terms and conditions therein expressed," he made false representations which led appellant to believe that the sum of money mentioned in the instrument was on deposit in the bank to the credit of Sonnefield & Emmins, and would be held by the bank to protect appellant in the event of legal liability.

W. Illingworth is sought to be made liable upon the ground that he executed to the bank a note and delivered the same to J. B. Adoue to be held by him for the purpose of indemnifying the bank against loss by reason of the action of J. B. Adoue in certifying the instrument sued on, in the terms hereinafter shown.

The bank defended upon the grounds, first, that it was without power to enter into the obligation sued upon, and that the act of its officers, president and cashier, were *ultra vires* and void, and therefore of no binding force upon the bank. Second, that the obligation of the bank, if any, imposed by the terms of certification of the instrument sued on, was secondary, and in the nature of a surety obligation based upon the contract then existing between Sonnefield & Emmins and the First National Bank Building Company, Limited, of Shreveport, Louisiana, and that there were subsequent alterations and changes made in the contract by said original parties thereto and the Fidelity & Deposit Company of Maryland, without notice to or consent of the bank, and that this operated as a release and discharge of the bank from liability under such certification of the instrument sued on.

J. B. Adoue answered, first, by general denial; second, that in certifying and signing the instrument sued on he acted in his official capacity as president of the bank; that he made no misrepresentations or concealments, and in nowise deceived or misled the plaintiff, etc., but acted in entire good faith in the premises, etc.

W. Illingworth answered, first, by general denial; second, that the note executed by him to the bank was delivered to J. B. Adoue in trust with the understanding that same should be by him held as indemnity against loss to the bank by reason of the certification of the note sued on, etc.

The case was tried by the court without the intervention of a jury

upon an agreed statement of facts, which had been reduced to writing and signed by the parties and resulted in a judgment for the defendants. Upon motion of the plaintiff to file conclusions of fact and law the trial court adopted the agreed statement of facts as his findings of fact in the case, and for his conclusions of law simply stated, "Upon said facts judgment should be rendered for the defendants, which will accordingly be now done." The agreed statement of facts is also adopted by this court as its conclusions of fact.

*Opinion.*—1. Appellant was dissatisfied with the court's general conclusions of law that judgment should be rendered for the defendants, and filed a motion requesting specific findings of law upon several designated issues. This motion was refused and the court's action upon it is assigned as error. There was and is no dispute about the facts. They were agreed upon, reduced to writing and submitted to the court on the trial of the. case. This agreed statement of the facts was adopted by the trial court as its conclusions of fact and the same is found in the record sent to this court as a full statement of the facts to be considered on this appeal. In this attitude of the record the judge's refusal to file specific conclusions of law, expressive of his views of the legal questions involved, resulted in no injury to appellant and hence furnishes no sufficient ground for a reversal of the case. City Nat. Bank v. Stout, 61 Texas, 567; Umscheid v. Scholz, 84 Texas, 265.

2. Appellant contends, in effect, that the instrument declared on is a check certified by the bank in the usual course of banking business and fixed the liability of the bank thereon upon the happening of the contingency expressed upon its face. This proposition is controverted by appellees and the position taken that the contract sued on, so far as the bank is concerned, is a surety or indemnity obligation indemnifying appellant to the extent of $10,159 against liability and loss arising from default of Sonnefield & Emmins in the performance of the contract with the First National Bank Building Company, Limited, for the erection of a building in Shreveport, Louisiana, and is *ultra vires,* and not binding upon the bank. We think it clear that the instrument in question is not a commercial check certified in the usual course of business and that the principles applicable to such checks can not be invoked to fix liability on the bank. Indeed, we think it is plain from the face of the instrument that it is a check or order drawn and certified entirely outside of the usual course of banking business. Mr. Daniel, in his .work on Negotiable Instruments, vol. 2, sec. 1566, defines a check as follows: "A check is a draft or order upon a bank or banking house, purporting to be drawn upon a deposit of funds for the payment at all events of a certain sum of money, to a certain person therein named, or to him or his order, or to bearer, and payable instantly on demand." Tested by this definition the instrument sued on is lacking in more than one of the essential characteristics of this species of commercial paper. It is not for the payment of a certain specified sum of money, nor is it payable instantly on demand. Neither is any amount by the terms of the instrument payable at all events. On the contrary, the amount agreed to be paid is uncertain and de-

pendent on condition that the drawers shall fail to comply with the terms of a certain building contract existing between them and a third party, namely, First National Bank Building Company, Limited, of Shreveport, Louisiana, and on the further condition that the drawee (appellant) as surety on the drawer's bond for the faithful performance of said contract shall have become legally liable on said bond. The text writers differ in their definitions of a check, some falling short, it is said, "of giving all its distinguishing qualities, and some ascribing to it qualities, which it is not absolutely necessary that it should possess;" but the definition quoted is sustained by many authorities, among which are the following: Blair & Hoge v. Wilson, 28 Gratt., 170; Ridgely Bank v. Patton, 109 Ill., 484; Harrison v. Nicollet Nat. Bank, 41 Minn., 489; Cincinnati Oyster & Fish Co. v. National Lafayette Bank, 51 Ohio St. Rep., 106; Exchange Bank v. Sutton Bank, 78 Md., 577; Kavanaugh v. Farmers' Bank, 59 Mo. App., 540. That it shall be payable instantly on demand and unconditionally for a sum certain, are certainly essential elements, and inasmuch as the check or order we are considering shows on its face that the time of its payment was uncertain, and the amount which the bank might become liable for not definitely fixed by its terms, and that its liability for any amount whatever was conditioned and dependent upon the happening of certain contingencies, we are quite sure it was not a check certified in the usual course of business, and therefore no officer of the bank had implied authority to certify it.

That the president or cashier of a bank *ex officio* has implied power to certify a check drawn in the usual course of banking business when presented for payment, seems to be well settled. Such a check is supposed to be drawn upon a previous deposit of funds and when certified is an appropriation of such funds to the holder of the check. In such case the money no longer belongs to the drawer. 1 Morse on Banking, 382. But "without special authority conferred upon him the officer of a bank has no implied authority to certify any but commercial checks, that is, those drawn in commercial form in the usual course of business," and the certification of other than such checks will not bind the bank, unless express authority for so doing is shown. So that "if the check bears upon it a memorandum that it is to be held as collateral, etc., the cashier's certification is not in due course and will not bind the bank unless expressly authorized." Dorsey v. Abrams, 85 Penn. St. Rep., 299; 2 Daniel on Negotiable Instruments, sec. 1607.

The proposition that appellant was a bona fide holder of the order for value is unavailing. It was not shown that either the president or the cashier of the bank was expressly authorized or empowered to certify said order, and the face of the instrument affected appellant with notice that it was not a commercial check. This was sufficient to put appellant upon inquiry as to the authority of said officers.

3. Treating the contract sued on as a surety or indemnity obligation indemnifying appellant to the extent of $10,159 against

liability and loss arising from default of Sonnefield & Emmins in the performance of their contract with the First National Bank Building Company, Limited, as we think it should be, then the acts of the officers of the bank in entering into such an obligation must be held to be *ultra vires* and void. Section 5136 of the Revised Statutes of the United States provides, that national banks shall have power: "To exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the banking business; by discounting and negotiating promissory notes, drafts, bills of exchange and other evidence of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security; and by obtaining, issuing and circulating notes according to the provisions of this title." In construing this statute the courts of the United States, to whose interpretation of such laws the State courts must yield, have repeatedly held, in effect, that it is not within the corporate power of a national bank to become surety or guarantor for another, or to bind itself to answer for the debt or default of another. In First Nat. Bank v. American Nat. Bank, 72 S. W. Rep. (Mo.), 1059, the authorities upon the subject are cited *in extenso* and the rule declared to be "that a national bank has no power, with or without a sufficient consideration, to agree or bind itself that a draft of A. upon B. will be paid; that such agreement is a mere guaranty, and is not within the powers conferred upon such banks; and that when sued upon such a contract, the bank can successfully interpose a defense of *ultra vires.*" In Commercial Nat. Bank v. Pirie, 82 Fed. Rep., 799, the rule is stated thus: "The Act of Congress under which the bank was organized, confers no authority upon national banks to guaranty the payment of debts contracted by third parties, and acts of that nature, whether performed by the cashier of his own motion or by direction of the board of directors, are necessarily *ultra vires*. A national bank may endorse or guaranty the payment of commercial paper which it holds, when it rediscounts or disposes of the same in the ordinary course of business. Such power, it seems, a national bank may exercise as incident to the express authority conferred on such banks by the national banking Act to discount and negotiate promissory notes, drafts, bills of exchange and other evidence of debt (People's National Bank v. Manufacturer's National Bank, 101 U. S., 181, 183; United States Nat. Bank v. First Nat. Bank, 49 U. S. App., 67, 24 C. C. A., 597); but it has never been supposed that the board of directors of a national bank can bind it by contracts of suretyship or guaranty which are made for the sole benefit and advantage of others. The national banking Act confers no such authority in express terms or by fair implication, and the exercise of such power by such corporations would be detrimental to the interest of depositors, stockholders and the public generally." Citing Norton v. Bank, 61 N. H., 589; State Nat. Bank of St. Joseph v. Newton Nat. Bank, 32 U. S. App., 52, 58; Farmers' & M. Bank v. Smith, 40 U. S. App., 690, 23 C. C. A., 80, and 77 Fed., 129. It follows that the effort on the part of the president and cashier

of the appellee bank in this case by the acts disclosed to create upon it an obligation to indemnify appellant to the extent of the amount specified in the instrument. declared on against liability and loss arising from default of Sonnefield & Emmins in the performance of their contract with the First National Bank Building Company, Limited, or to in any manner answer to that extent for such default, was *ultra vires* and not binding upon the bank. Commercial Bank v. First Nat. Bank, 97 Texas, 536; Groos v. Brewster, 55 S. W. Rep., 590; First Nat. Bank v. American Nat. Bank, 72 S. W. Rep., 1059; Bowen v. Needles Nat. Bank, 87 Fed. Rep., 430, and cases cited.

The foregoing authorities also sustain the view that under the circumstances of this case the bank was and is not estopped to plead *ultra vires,* but the remarks quoted from cases mentioned below are especially applicable. In California Bank v. Kennedy, 167 U. S., loc. cit., 367, 42 L. ed., 198, Mr. Justice White says: "Whatever divergence of opinion may arise on this question from conflicting adjudications in some of the State courts, in this court it is settled in favor of the right of the corporation to plead its want of power; that is to say, to assert the nullity of an act which is an *ultra vires* act." In Central Transp. Co. v. Pullman Palace Car Co., 139 U. S., at pages 59 and 60, it is said: "A contract of a corporation which is *ultra vires* in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract can not be ratified by either party because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity or be the foundation for any right of action upon it." It must be borne in mind that we are speaking of acts that are *ultra vires* absolute, that is, such as are "beyond the powers of the bank for any purpose and under all circumstances, and not acts that are *ultra vires* by circumstance or such as are beyond its authority for some purposes or under some circumstances, but are within its power under other circumstances or for other purposes." We regard the acts involved in this controversy to be of the character first named. Many of the authorities cited and discussed by appellant have reference to acts *ultra vires* by circumstances unknown, and hence not applicable to the facts of this case.

4. There is no assignment of error complaining of the judgment in favor of Illingworth, and the only remaining question requiring notice is, whether or not J. B. Adoue became, and was individually, liable upon the obligation sued on. Such liability is claimed by appellant upon the ground that Sonnefield & Emmins did not, at the date of the giving of the order, have money on deposit in the bank sufficient to pay the same, and that Adoue by certifying the said order, "as per terms and conditions therein expressed," falsely led the appellant to believe that the sum named in said obligation

was on deposit to the credit of said Sonnefield & Emmins and would be held by the bank to protect appellant in the event it should become legally liable on its bond to the First National Bank Building Company, Limited. This proposition can not be maintained. It clearly appears that J. B. Adoue, in certifying and signing the instrument, acted as an officer of the bank, and with a view of binding only the bank. He made no misrepresentations whatever, so far as the evidence shows, and having acted simply as an officer of the bank, and no liability being fixed upon the bank, Adoue is not individually liable. First Nat. Bank v. Commercial Nat. Bank, 99 Texas, 118; Holt v. Winfield Bank, 25 Fed. Rep., 812.

Again, as the check sued on was not a certified check issued in the usual course of business, the presumption would not obtain, or could not be indulged, as it would or could be in the case where such a check was given, that funds had been deposited with the bank to meet it. The face of the instrument was notice to appellant of that fact, and that it did not have the effect to appropriate any deposit of Sonnefield & Emmins to its payment. Adoue did not represent that there were such funds on deposit for that purpose and he can not be charged with having deceived or misled appellant into the belief that there were, by the mere certification of the order. If appellant was ignorant of the fact that no funds of Sonnefield & Emmins were in the bank to meet the order, it must be attributed to its neglect and want of investigation. There were in fact no such funds, and inquiry would have disclosed to appellant that fact. The action of the court in rendering judgment for appellees embraces a finding that, under the facts and circumstances disclosed by the evidence, there was no such misrepresentation or concealment on the part of Adoue as to render him individually responsible for the amount of the order, and we think such finding warranted by the evidence and it will not be disturbed. Certainly, the court was not authorized, under the circumstances, to declare, as a matter of law, that the mere unauthorized act of certifying and signing the order, constituted such a legal fraud upon appellant as rendered Adoue personally liable.

Believing no reversible error is apparent of record the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.