710   People ex rel. Peabody, H. & Co., Inc., v. Goldfogle.

First Department, July, 1925.                    [Vol. 213

The People of the State of New York ex rel. Peabody, Hough-
teling & Co., Inc., Respondent, v. Henry M. Goldfogle
and Others, as Commissioners of Taxes and Assessments of the
City of New York, Appellants. (Moneyed Capital Taxes of 1923.)

First Department, July 6, 1925.

**Taxation — tax on moneyed capital coming into competition with business
of National banks — money used to underwrite first mortgage bonds
does not come into competition with business of National banks and
is not taxable on that basis.**

The capital of the relator, which was organized to carry on the business of an
investment company and which is actually engaged in the business of under-
writing first mortgage bonds of other corporations, does not come into com-
petition with the business of National banks and is not taxable on that basis.

Appeal by the defendants, Henry M. Goldfogle and others,
from an order of the Supreme Court, made at the New York Special
Term and entered in the office of the clerk of the county of New
York on the 29th day of December, 1924, in certiorari proceedings
brought to review assessments on property of the relator, under
the Laws of 1923, chapter 897, amending the Tax Law and known
as the Moneyed Capital Tax Law, directing that the assessment
of $100,000 made by the defendants for the purposes of taxation
for the year 1923, against the relator on the value of moneyed
capital owned or held by the relator coming into competition with
the business of National banks, be vacated and canceled.

*George P. Nicholson*, Corporation Counsel [*William H. King* of
counsel; *Eugene Fay* with him on the brief], for the appellants.

*Carlyle M. Keyes* [*Guernsey Price* with him on the brief], for the
respondent.

Dowling, J.:

The relator is a New York corporation, organized to carry on
business of an investment company, with powers as defined in the
Banking Law,* in addition to powers conferred by the General
Corporation Law and the Stock Corporation Law, exclusive,
however, of powers stated in subdivisions 4 and 5 of section 293 of
the Banking Law,* and without power to receive deposits or to issue
its own debenture bonds or notes secured by deed or deeds of trust.

The relator was conducting its business at 366 Madison avenue,
New York city, such business consisting solely of (1) purchasing

---

* See Banking Law, art. 7, as amd.; Id. § 293, subd. 4, as amd. by Laws of
1920, chap. 721; Id. § 293, subd. 5, added by Laws of 1915, chap. 139, as amd. by
Laws of 1917, chap. 228.— [Rep.

with its own funds in accordance with its underwriting agreements, complete issues of corporate bonds bearing interest, secured by first mortgage on, or deed of trust to trustees to secure said bonds of, improved real estate, consisting of real estate and plant of industrial corporations or of apartment buildings or of such improved real estate together with certain equipment and personal property located thereon, such mortgages or deeds of trust providing that they should cease and determine upon due payment of principal and interest of such bonds at maturity, none of said bonds being secured by mortgages on farm property or by mortgages on real estate, as distinguished from farm lands, which matured within a period of one year or less and none of said bonds being government, State, municipal, railroad or public utility bonds; and (2) selling at a profit such bonds to its customers for cash.

The learned justice at Special Term (*sub nom. People ex rel. Broderick* v. *Goldfogle*, 123 Misc. 399) said: " Peabody, Houghteling & Co. are engaged in the business of buying and selling complete issues of corporate bonds secured by real estate mortgage. This is not any part of the business of a National bank.   In Morse on Banks and Banking (5th ed. vol. 1, § 59, and note 4) it is stated: ' In this country the general rule is, that any bank may loan on the security of stocks or bonds of other corporations, but cannot buy and sell them  *  *  *.   It is no part of the banking business to engage in " traffic " in merchandise or financial securities.' " This is the rule also enunciated in Pratt's Digest of National Banking Laws (at p. 13), where the author says: " A National bank has no power to deal in stocks and bonds, or buy and sell them upon commission.   Such operations are not incidental to the business of banking as defined in the statute.  *  *  *   And the prohibition is implied from the failure to grant the power." So, in *California Bank* v. *Kennedy* (167 U. S. 362) Mr. Justice WHITE said (at p. 366): " It is settled that the United States statutes relative to National banks constitute the measure of the authority of such corporations, and that they cannot rightfully exercise any powers except those expressly granted, or which are incidental to carrying on the business for which they are established. (*Logan County Bank* v. *Townsend*, 139 U. S. 67, 73.)   No express power to acquire the stock of another corporation is conferred upon a National bank, but it has been held that, as incidental to the power to loan money on personal security, a bank may in the usual course of doing such business accept stock of another corporation as collateral, and by the enforcement of its rights as pledgee it may become the owner of the collateral and be subject to liability as other stockholders. (*National Bank* v. *Case*, 99 U. S. 628 )   So, also, a National bank

may be conceded to possess the incidental power of accepting in good faith stock of another corporation as security for a previous indebtedness. It is clear, however, that a National bank does not possess the power to deal in stocks. The prohibition is implied from the failure to grant the power. (*First National Bank* v. *National Exchange Bank*, 92 U. S. 122, 128.) " And again (at p. 369): " The power to purchase or deal in stock of another corporation, as we have said, is not expressly conferred upon National banks, nor is it an act which may be exercised as incidental to the powers expressly conferred. A dealing in stocks is consequently an *ultra vires* act. Being such, it is without efficacy. *Pearce* v. *Railroad Company*, 21 How. [U. S.] 441, 445."

In *Farmers' & Merchants' Nat. Bank* v. *Smith* (77 Fed. 129) an attempt was made to bring the sale of mortgage bonds on commission within the term " negotiating " as used in the National Bank Act. (See U. S. R. S. § 5136.) The court, by Thayer, Circuit Judge, said (at p. 136): " The representation contained on the face of the mortgage that it was ' negotiated by the Farmers' & Merchants' National Bank,' and the other circumstances to which we have adverted, would naturally lead any one to infer that in the particular transaction the bank was acting in the capacity of a broker, and that it had probably become engaged, quite extensively, in that line of business. * * *

" Concerning the power of the defendant bank to engage in the business of selling mortgage bonds on commission, little need be said, because it does not seem to be claimed that such a power could be lawfully exercised by the bank. The brokerage business is entirely distinct from the business of banking which it was authorized to transact. If a National bank can lawfully act as a broker in selling farm mortgages for a commission, no reason is perceived why it may not act in the same capacity in selling any other species of property, real or personal. The National Bank Act does not, in terms, or by necessary implication, authorize National banks to act as brokers in negotiating the sale of securities, and it is generally agreed that they cannot lawfully engage in such business."

The learned counsel for appellants does not refer us to any case controverting these statements of the law and decisions of the courts. It follows that the business in which relator had its capital invested was not one in which National banks might lawfully engage, and, therefore, relator was not in competition with them.

The order appealed from should, therefore, be affirmed, with ten dollars costs and disbursements.

Clarke, P. J., Finch, McAvoy and Martin, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.