## JOYCE v. FIRST NAT. BANK OF SNY-DER, TEX.

### No. 1601.

Court of Civil Appeals of Texas. Eastland.

Nov. 27, 1936.

C. F. Sentell, of Snyder, for appellant.

Harris & Sentell, of Snyder, for appellee.

LESLIE, Chief Justice.

J. R. Joyce instituted this suit against the First National Bank of Snyder to recover on a vendor's lien note for $1,200, interest, etc., due February 1, 1932. The bank denied liability and pleaded that the alleged assumption by it of the note, etc., was an ultra vires act and unenforceable. The trial was before the court without a jury and judgment was rendered in favor of the plaintiff for the balance due on the note and foreclosure of the vendor's lien against 240 acres of land; but denied personal judgment against the defendant bank on the ground that the alleged assumption was ultra vires, etc. The plaintiff appeals contending that the court erred in not granting him a judgment upon the grounds of ratification and estoppel.

Appellant, Joyce, owned an equity in the 240 acres of land in Scurry county against which there was a first lien in favor of the First Texas Joint Stock Land Bank of Houston for the sum of $3,000, interest, etc.

On February 7, 1929, he conveyed this land to Robert H. Curnutte, who, as part consideration therefor, executed and delivered to said Joyce two vendor's lien notes payable to his order, No. 1 for $593.-38 due twelve months after date, and No. 2, the one in suit, for $1,200, due February 1, 1932.

November 27, 1929, Curnutte executed a warranty deed to appellee, First National Bank of Snyder, conveying to it said land for a recited consideration of $10 (which was never paid) and the assumption by the bank of the two notes execut-

ed by him to Joyce, as well as the $3,000 indebtedness to the Houston bank.

The bank denied that it ever purchased said land, or assumed any of said obligations, and denied it had ever ratified the act and alleged that if the directors had ever attempted to accept said title or confirm said transaction, such acts were in violation of the land governing national banks, and in particular that part of the federal statutes which define the authority and purposes for which national banks may take title to land.

The trial of the case reflects that there were primarily two issues involved. First, whether or not the conveyance of the land in question from Curnutte and the assumption by the bank of the indebtedness thereon was an ultra vires transaction and therefore unenforceable; and, second, was the bank by its act in exercising a certain character of control and ownership over the land estopped from denying title to the land and liability for the indebtedness alleged to have been assumed by it?

There is also the collateral question of whether or not the defendant could defend upon the ground of ultra vires the contention being that such act could be questioned only by the Comptroller of Currency of the United States.

■ The right of the defendant corporation to defend in a proper case upon the ground that an act is ultra vires is well established. Fidelity & Deposit Co. of Maryland v. National Bank of Commerce, 48 Tex.Civ.App. 301, 106 S.W. 782 (writ ref.).

The other contentions presented by this appeal will now be examined in the light of the findings of fact and conclusions of law. No request was made by either litigant for additional findings and conclusions. The correctness of the judgment must be tested by those made by the court. In substance they are as follows:

That the First National Bank of Snyder went into voluntary liquidation August 15, 1928, and was still in the process of liquidation at the date of this trial, retaining at all times its charter as such bank; that the board of directors assumed the position of trustees of the assets and liabilities of the bank at the time of its going into liquidation, and appointed Robt. H. Curnutte, who had been the active vice president of the bank, and Harvey Shuler, who had been its cashier, a committee of liquidating agent of the bank, and that said individuals so acted during all the transactions involved in this lawsuit.

That J. R. Joyce, plaintiff herein, conveyed the land in question to Robt. H. Curnutte personally on February 7, 1929, and as part consideration of such conveyance Curnutte executed and delivered to Joyce the $1,200 note in suit, together with note No. 1 for $593.38; said notes were of even date with the deed, payable to J. R. Joyce on or before December 1, 1929, and on or before February 7, 1932, respectively; that Joyce retained a vendor's lien on the land to secure payment of the same.

That the purchase of the land by Curnutte from Joyce and extensions of said note were all a personal transaction on the part of Curnutte, who was in no wise attempting to act for the bank. That on November 27, 1929, said Curnutte, without any authority from the board of directors of the bank, conveyed the land in question to the defendant, First National Bank, by a regular warranty deed, reciting a consideration therefor of $10 cash and the assumption by the defendant bank of the two above-mentioned notes, payable to Joyce, and the further assumption by the bank of the prior $3,000 note, payable to the First Texas Joint Stock Land Bank of Houston, Tex., secured by a prior lien on said land. "That the conveyance of said land by Curnutte to the defendant bank was not made by him in satisfaction of any indebtedness owing by Curnutte nor by anyone else to the defendant bank, but was an attempt of a straight sale by Curnutte to the defendant bank and an outright purchase by said bank of the property in question."

The court further finds that after the conveyance of the land from Curnutte to defendant bank and the discovery of the same by the board of directors that they exercised a character of ownership authority over the land, and in a formal meeting made orders concerning the prospective leasing of the land; that the bank rendered the land for taxation for the years 1930 to 1935, inclusive, and paid the taxes thereon and that all taxes had been paid to the date of trial; that the bank as the grantee in the deed from Curnutte had collected during the previous years

crop rentals amounting to approximately $250.

The court further finds that on January 2, 1930, the defendant bank paid to J. R. Joyce the above-mentioned note No. 1 for $593.38, together with $42.28 interest thereon, and paid $96 interest on the $1,200 note, and on March 3, 1931, the defendant bank paid Joyce $96 interest on the $1,200 note, and on June 1, 1933, the defendant bank paid to Joyce $513.50 on the $1,200 note. That the defendant bank has kept up the annual payments to the Joint Stock Land Bank on the $3,000 prior lien, paying the said bank approximately $525. That approximately $1,000 remains unpaid on the note in suit, and that J. R. Joyce is the owner and holder of the note.

Upon these findings the court granted the plaintiff a judgment establishing the amount of his debt, interest, attorney's fees, etc., to be $1,165.83, together with a foreclosure of the vendor's lien against said land, subject, however, to the prior lien securing the $3,000 owing to the Houston bank. The court denied the plaintiff a personal judgment against the defendant, First National Bank of Snyder, for his debt or any part thereof.

As the specific basis for the judgment upon the findings of fact, the court makes the following conclusion of law:

"I conclude as a matter of law that the sale and conveyance of the land in question from Robert H. Curnutte to defendant bank and the assumption by the bank of the indebtedness thereon was an ultra vires transaction and an unenforceable contract. That a National Bank, chartered under the laws of the United States, is without authority and prohibited by statute from investing the funds of the bank in purchasing real estate as was done in this instance, and that the liquidating agent and board of directors of a national bank in process of liquidation has even less authority in the investment of the funds of the bank than the bank would while functioning as a bank."

We think the unchallenged fact findings warrant the conclusions reached by the trial court. As we interpret the record, the appellant does not contend that the purported conveyance of the land by Curnutte to the bank was not an ultra vires act, even had the board of directors (while the bank was in the process of liquidation, or while functioning as such) undertaken to authorize the same. The only contention made is that the transaction was merely voidable, and the bank had ratified same or had become bound by estoppel, thus entitling plaintiff to a judgment.

There is no question of ratification in the case. Curnutte, as one of the liquidating agents, or as the active vice president prior to liquidation, had no power or authority in law to bind the bank in the purchase of the land and the assumption of said obligations. Under the statutes and authorities, no such power existed in the bank or its directors, either in the process of liquidation, or while functioning as such. 12 U.S.C.A. § 29; Fidelity & Deposit Co. v. National Bank of Commerce, 48 Tex.Civ.App. 301, 106 S.W. 782, 785; Taylor Feed Pen Co. v. Taylor Nat. Bank (Tex.Com.App.) 215 S.W. 850, 851. As said in the opinion in Taylor Feed Pen Co. v. Taylor Nat. Bank, supra: "In the absence of power to make the contract, there can be no power to ratify it. The mere fact that the other party to the contract has done something thereunder, and the corporation received some benefit thereby, could not take away the incapacity and vitalize the contract. Gaston & Ayres v. Campbell Co., 104 Tex. 576, 140 S.W. 770, 141 S.W. 515; Northside Ry. Co. v. Worthington, 88 Tex. 562, 30 S.W. 1055, 53 Am.St.Rep. 778; Deaton Grocery Co. v. International Harvester Co., 47 Tex.Civ.App. 267, 105 S.W. 556; Central Transp. Co. v. Pullman's Palace Car Co., 139 U.S. [24] 58, 11 S.Ct. [478] 484, 35 L.Ed. 68; National Home B. & L. Ass'n v. Home Sav. Bank [181 Ill. 35, 54 N.E. 619, 64 L.R.A. 399, 72 Am.St.Rep. 245], supra."

The point made is not that the corporation ought not to have made the contract, but that it could not make it. Under circumstances analagous to those in the instant case, it was held in Fidelity & Deposit Co. v. National Bank of Commerce, supra, quoting with approval from the opinion in Central Transp. Co. v. Pullman's Palace Car Co., 139 U.S. 24, 58, 11 S.Ct. 478, 35 L.Ed. 55: "The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation for any right of action upon it."

■ Neither the liquidating trustees, nor the directors of the bank as such having the power in law to do the unauthorized act, the acquisition of the land being entirely beyond the legitimate purposes for which a national bank may acquire such property, they are equally without power to ratify the same. They may not do indirectly what they are unable to do directly. The authority of any one, even the board of directors of a corporation, to act for the company is circumscribed by the powers conferred upon the corporation by its charter and by general statutory provisions; and it is generally held that those dealing with the corporation are bound to take notice of the limitations of the authority thereby imposed.

■ As we interpret the findings of fact and conclusions of law, they do not speak upon the issue of estoppel, and no request was made for additional findings on that issue as a basis for judgment for plaintiff. Hence, the point is waived and further consideration of that assignment is unnecessary.

■ However, if by implication the question of estoppel is reflected in the fact findings, then we are of the opinion that there is no merit in the contention. A careful study of this record convinces us that the conclusion giving effect to the defense of ultra vires does not under the facts of this case defeat or militate against the ends of justice. In other words, this record reflects no reason why the doctrine of ultra vires should give way before any principle of estoppel.

Joyce, the plaintiff, never negotiated with the bank or any one authorized to represent it concerning its alleged purchase of the land and assumption of said obligations. That was Curnutte's personal transaction. As to Joyce, the bank was merely a remote vendee of the land and each vendee that assumed the obligation to him, or the one to the Houston bank, which was the first lien upon the land, benefited him. The defendant bank or those supposed to represent it actually paid Joyce about $1,340.78 and in addition paid about $525 on the indebtedness of the Joint Stock Land Bank. It also paid the taxes. Joyce's position and his security was in no way affected to his detriment by the acts of the bank. In fact, the whole transaction, regardless of its legal nature, resulted in profit to Joyce and loss to the bank. The lien in favor of Joyce remained intact. The bank never misled him. Curnutte was still liable on the debt. The lien could have been foreclosed two or three years prior to this suit, but Joyce doubtless perceived that his equity in the land increased in value by each payment made by the bank of taxes and indebtedness against it. True, the bank (during the period following the execution and alleged delivery of the Curnutte deed) collected farm rents approximating $250, but this could and doubtless would have been done by Curnutte had he retained the land, or by any other vendee of the land pending recovery of same by Joyce. Such a rent was in no event the property of Joyce.

The appellant wholly fails to show that the indebtedness or assumption upon which he sues is the legal and binding obligation of the defendant bank. The facts clearly reflect that it arose out of an ultra vires act rendering it unenforceable under the circumstances. The purported purchase of the land by the bank as well as the assumption of appellant's debt was not within the powers conferred by Congress. This conclusion is based particularly on the rules of law applied in the following authorities: 12 U.S.C.A. § 29; Kosse Nat. Bank v. Derden et al. (Tex. Civ.App.) 36 S.W.(2d) 295; Carpenter v. Ferris Nat. Bank (Tex.Civ.App.) 60 S.W. (2d) 495; Williams v. Merchants' Nat. Bank (D.C.) 42 F.(2d) 243; Jackman v. Continental Nat. Bank (C.C.A.) 16 F.(2d) 728, 51 A.L.R. 336; McCormick v. Market Nat. Bank, 165 U.S. 538, 17 S.Ct. 433, 41 L.Ed. 817; Central Transp. Co. v. Pullman's Palace Car Co., 139 U.S. 24, 11 S. Ct. 478, 35 L.Ed. 55.

For the reasons assigned, the judgment of the trial court is affirmed.