**CITIZENS' NAT. BANK OF CAMERON et al. v. GOOD ROADS GRAVEL CO. et al.   (No. 8080.) \***

(Court of Civil Appeals of Texas. Galveston. Dec. 1, 1921. Rehearing Denied Jan. 12, 1922.)

1. **Banks and banking ⬅═260(4) — National bank cannot be guarantor of obligation of another.**

A national bank cannot lend its credit or become the guarantor of the obligation of another, unless it owns or has an interest in the obligation guaranteed, especially where it receives no benefits therefrom.

2. **Banks and banking ⬅═262—Cashier of national bank held not to represent bank in guaranteeing payment of note.**

Cashier of national bank did not act as its agent in guaranteeing payment of note, which was never owned or transferred by the bank, and his acts were not ratified because the proceeds of the note passed through the bank without knowledge on the part of the bank of the material facts.

3. **Principal and agent ⬅═163(3)—Agent cannot ratify own unauthorized acts.**

An agent cannot, by his own acts, ratify his previously unauthorized acts.

4. **Principal and agent ⬅═166(1)—Ratification must be had with knowledge of material facts.**

Ratification of unauthorized acts of agent must be had with full knowledge of all material facts.

5. **Banks and banking ⬅═262—Knowledge of cashier of national bank not imputable to the bank.**

Knowledge of cashier of national bank of his own acts in guaranteeing payment of note of third parties, in his own personal interest, and not in the transaction of the bank's business, and hostile to that of the bank, and concealed therefrom, was not imputable to the bank.

6. **Limitation of actions ⬅═28(1) — Two-year statute applies to fraud.**

The two-year statute of limitation applies to actions for fraud and deceit.

7. **Limitation of actions ⬅═104(2) — Statute runs as to fraud in absence of concealment.**

Neither fraud alone nor ignorance of its existence will prevent the statute of limitations from running, unless the ignorance is attended with such concealment of the fraud as will prevent its discovery by the exercise of reasonable diligence.

8. **Limitation of actions ⬅═100(11) — Confidence no excuse for lack of diligence to discover fraud.**

The mere fact that one has confidence in another is not sufficient to excuse lack of diligence in investigating to discover fraud, as far as the running of limitations is concerned.

Appeal from District Court, Colorado County; M. Kennon, Judge.

Suit by the Citizens' National Bank of Cameron against the Good Roads Gravel Company and others. From an adverse judgment, the plaintiff and others appeal. Affirmed.

M. G. Cox and W. A. Morrison, both of Cameron, for appellant Citizens' Nat. Bank of Cameron.

Fiset & Shelley, of Austin, for appellant American Surety Co.

Otto Taub and Dannenbaum, Amerman & Sears, all of Houston, for appellee Exchange Nat. Bank.

John C. Hayo, of Columbus, for appellee Barding.

C. D. Krause, of La Grange, for appellee Mattern.

LANE, J. This suit was instituted by the appellant the Citizens' National Bank of Cameron, Tex., hereinafter called the Cameron Bank, against the Good Roads Gravel Company, a corporation, C. E. Scronce, J. L. Baughman, and J. W. Hertford and others, by filing its original petition. No copy of this original petition is in the transcript so as to enable us to determine the date of its filing, or who were then sued as defendants; nor is there anything in the entire record by which such information can be ascertained, except a recital in the findings of fact by the trial judge that said original petition was filed on the 31st day of August, 1914; and, as such finding is not challenged, we shall assume that it correctly states the date of such filing, and it seems to be conceded by appellant that the suit as originally brought was one to recover from C. E. Scronce, J. L. Baughman, Good Roads Gravel Company, and J. W. Hertford upon a certain note executed by C. E. Scronce and J. L. Baughman on the 6th day of September, 1913, for the sum of $7,000, the same being payable to themselves six months after date, and by each of them indorsed in blank, and for a foreclosure of its mortgage and other liens upon certain properties against the parties above named and others not named; the note having become its property.

It is also conceded that the appellee, Houston National Exchange Bank, hereinafter called the Houston Bank, was made a party to this suit for the first time by plaintiff's third original amended petition, filed on the 6th day of July, 1917.

On the 5th day of September, 1918, the plaintiff Cameron Bank filed its fourth original amended petition, upon which, together with its supplementary petitions thereafter filed, it went to trial. In this fourth amended petition the Good Roads Gravel Company, the Houston Bank, C. E. Scronce, J. L. Baughman, R. S. Simmons, W. E. Richards, J. Mattern, J. W. Hertford, T. F. Barding, W. E.

---

⬅═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction March 1, 1922.

Bridge and the American Surety Company of New York, hereafter called the surety company, were sued as defendants.

It is alleged that one Oxsheer Smith was the cashier of the plaintiff bank on the 16th day of September, 1913, and that J. W. Hertford was at such time the cashier of the Houston Bank; that at the aforesaid time the Houston Bank was, as it had been for a long time prior thereto, the "correspondent" of the plaintiff bank, and that at such time plaintiff had on deposit with the Houston Bank a sum of money of more than $50,000, and that the Houston Bank, desiring to acquire the title and ownership of a part of the plaintiff's money so deposited, did, on or about the 10th day of September, 1913, cause the defendant Hertford, who was then its cashier, to write on a regular letter head of the Houston Bank a letter as follows

"Mr. Oxsheer Smith, Cashier, Citizens' National Bank, Cameron, Texas—Dear Oxsheer Inclosed find note signed jointly by C. E. Scronce and J. L. Baughman for $7,000, bearing interest 8 per cent. from date, dated September 8, 1913, due six months after date, which I would like for you to handle for me.

"This note is secured by trust deed and mortgage on leases on 600 acres of land situated in Colorado county, containing valuable gravel pits, on which no incumbrances exist. Also secured by a contract to furnish 90,000 yards of gravel to the county commissioners of Ft. Bend County for road purposes; Ft. Bend County bonds having been deposited to secure this contract.

"Mr. Scronce is rated $10,000 first-grade credit, but he has considerable holdings of land, and I know that he is worth at least $25,000. Mr. Baughman is worth conservatively $3,000.

"This loan is strictly first-class and will in all probability be paid before maturity, and knowing that you would be in the market sooner or later for some good loans, thought you would like to handle this.

"I hold the trust deed, contract and all papers in connection with this loan and will send them to you if you desire, also I will personally guarantee to see that the note is paid on or before maturity.

"If this is satisfactory, you may send remittance or advice of credit for $7,000.

"Assuring you of my pleasure and willingness to reciprocate in a like manner at any time, and with best wishes, I remain,

"Yours truly,        J. W. Hertford."

That the plaintiff received said letter and note inclosed therewith, and, believing the statements made therein to be true, but which were in fact false, and having faith in the Houston Bank and its cashier, Hertford, and believing that Hertford had the right and authority to make such statement on behalf of the Houston Bank, it wrote the Houston Bank to charge its account with $7,000 in payment for said notes; that the Houston Bank did make such charge as directed, and that the plaintiff bank did credit the Houston Bank on its books with $7,000, and that the Houston Bank thereby took and applied $7,000 of the plaintiff's money in its own use and benefit, and by reason of the fact that the Houston Bank got the benefit of said money it became liable to the plaintiff for the payment of the $7,000 note as guarantor of the same.

Plaintiff further says that if it should be found by the court that the Houston Bank is not liable to it by reason of the foregoing allegations, and that defendant Hertford was not acting for and on behalf of the Houston Bank in writing the above-mentioned letter, then it shows to the court that before said bank charged plaintiff's account with the $7,000 as directed, it had full knowledge of the contents of the letter written by Hertford, and knew that the plaintiff was relying upon the representations, covenants, and guaranties therein contained, but, notwithstanding such knowledge, the Houston Bank charged it, the Cameron Bank, with $7,000, and thereafter appropriated $7,000 of its money to the use of said Houston Bank; that prior to and at the time of the execution of the $7,000 note, and at the time the same was sold to plaintiff bank, C. E. Scronce and J. L. Baughman were doing a general gravel business as partners under the name of Good Roads Gravel Company, and as such firm had given a mortgage upon certain properties, including certain rights in certain Ft. Bend county road bonds, to secure the payment of said note; that after said note was sold to plaintiffs Scronce and Baughman and the Houston Bank agreed among themselves to create a corporation; that they did so incorporate the Good Roads Gravel Company, and did then and there convey, assign, and deliver all the properties upon which Scronce and Baughman had given a lien to secure payment of said $7,000 to Good Roads Gravel Company as incorporated.

That in consideration of the aforesaid conveyance the Good Roads Gravel Company, Incorporated, assumed the payment of all legal indebtedness theretofore incurred for and by the firm of Good Roads Gravel Company, including the aforesaid $7,000 note; that at or about the time of the maturity of said $7,000 note, C. E. Scronce, J. L. Baughman, Houston Bank and Good Roads Gravel Company, Incorporated, desiring to obtain an extension of the time of payment of said note, the Good Roads Gravel Company, Incorporated, at the request of the other defendants just named, made and executed its promissory note for the sum of $8,250, payable to C. E. Scronce six months after date; that the note last mentioned was placed in the hands of defendant J. W. Hertford for the purpose of raising money to pay said $7,000, and he was instructed that in the event he was unable to raise the money to pay said note then he should place said $8,250 note with the plaintiff as collateral security

to secure said $7,000 note; that thereafter Hertford did so deliver said $8,250 note to the plaintiff, and that the plaintiff did then and there extend the time of payment of said $7,000 note for the term of four months; that said $8,250 note was secured by a mortgage upon all gravel leases and land and other rights and properties owned by said gravel company.

That for the purpose and with the intent to obtain preferences to themselves and to convert to their own use and benefit such collaterals and securities held by the plaintiff to secure said $7,000 note, the defendants Scronce, Baughman, R. S. Simmons, the Commonwealth Trust Company, W. E. Richards, T. F. Barding, Good Roads Gravel Company, and its officers and directors, acting collusively with defendant J. Mattern, then and there voluntarily joined in such scheme with full knowledge of all facts alleged in the petition, and to aid them in the same and for the further unlawful and fraudulent purpose on their part to misapply the plaintiff's securities and collaterals aforesaid under the cloak and guise of purported receivership proceedings did cause to be presented to the judge of the district court an application for the appointment of a receiver, in the name of J. Mattern, who was then and there not even a pretended creditor of the Good Roads Gravel Company, and who claimed only an open account in the sum of $527.70, and held no manner of security therefor, but to obtain prior payment of said Mattern's unsecured debt, and further moneys and funds from said purported receiver by dealings which they intended to have with them, they did, on May 8, 1914, before the expiration of the extension of time granted on the payment of said $7,000 note by plaintiff, present and caused to be presented to said judge such application for the appointment of a receiver in the name of said J. Mattern, before any petition in an action for any debt was ever filed with the clerk of said court, and without any suit or cause of action for any of said purposes being then and there pending; that said judge in vacation and in chambers and while at Seguin, Guadalupe county, Tex., did, at the instance of said defendants and in ignorance of their undisclosed plans, attempt to appoint J. F. Sandmeyer, who is now dead, and whose estate is insolvent and upon whose estate there is no administration and no necessity for administration, as pretended receiver (and fixed his bond as such in the sum of $10,000), and thereafter, on the 18th day of May, 1914, the said defendants did cause said Sandmeyer and the American Surety Company of New York, as surety for hire, to voluntarily execute, on May 18, 1914, the voluntary bond of said Sandmeyer as pretended receiver in the sum of $10,000, and by reason thereof all said defendants as joint trespassers took possession of and proceeded to dispose of the assets and the mortgaged machinery and gravel aforesaid as best suited their plans without lawful notice, or any character of notice, to the plaintiff, who was ignorant of their said acts and conditions until the time of the institution of this suit, and in utter disregard of the plaintiff's rights, liens, collaterals, and securities aforesaid, and as such trespassers they did take and abstract from said gravel leaseholds, and did sell and dispose of to parties, and at times and in amounts unknown to the plaintiff, gravel, without plaintiff's knowledge and consent, and did convert the same and the value and proceds thereof in the sum of $3,552.61 to their own use and benefit, and did so convert to their own use and benefit certain machinery mortgaged to plaintiff, of the value of $15,000, to plaintiff's damage in said sums, respectively, and thereby destroyed and wasted the whole corpus of said property, so that what is left of said property is now of no value whatsoever, and by the means alleged there came into the hands of said defendants all of said mortgaged property, machinery, gravel, and assets aforesaid in the sum and amount of more than $50,000, and all of said defendants thereby became, and all are now liable, obligated, and bound to pay to the plaintiff in this suit the amount of the principal, interest, and collection fees due upon said $7,000 note; that the plaintiff was ignorant of the filing of such proceedings, and said defendants and each of them wholly failed and refused to notify the plaintiff of the pendency of such proceedings, and failed to make plaintiff a party thereto, and plaintiff did not know thereof until shortly before the filing of this suit, and never entered an appearance, or filed any answer therein, but thereafter, on September 21, 1915, the said Sandmeyer did resign as such purported receiver after the filing of this suit, and after the service of notice herein upon said surety company, who then and there became aware of the acts of conversion herein alleged, and without any further application therefor, and without notice having been issued or served upon this plaintiff, the judge or the court did attempt to appoint one W. E. Bridge as purported receiver of said gravel company, and fixed his bond at $10,000, and on September 25, 1915, he and said surety company both voluntarily and for hire executed and delivered and filed in said cause another and different bond.

That everything done and attempted to be done in and about said purported receivership proceedings is void as to plaintiff for each of the following reasons:

(a) Because of the fraudulent scheme, plan, and conspiracy herein alleged.

(b) Because plaintiff is a first lien holder and a secured creditor of said gravel company, and said Mattern was only a simple account creditor, and not entitled, under the Constitution and laws of Texas, to the ap-

pointment of a receiver without service of process or notice upon plaintiff, and without entry of an appearance in said proceedings by plaintiff.

(c) Because plaintiff was not served with process or notice of such proceedings, and did not enter an appearance therein, and had no actual notice thereof.

(d) Because the attempted appointment of Sandmeyer was before any petition or suit or cause of action for debt was filed by the applicant for such appointment, and he was not then and there a "creditor" of said gravel company.

(e) Because the acts of said defendants and said purported receiver were without any previous valid order of court authorizing the same.

(f) Because Mattern's petition did not state ground authorizing the appointment of a receiver.

That by reason of the matters alleged the trial court never acquired any jurisdiction of the property or assets of said Good Roads Gravel Company upon which plaintiff so held its liens, and that all of said defendants, and especially said defendant American Surety Company of New York, each and all became liable and bound to the plaintiff for said acts and trespasses and waste and destruction of the assets of said Good Roads Gravel Company, upon which plaintiff so held its lien, and, having converted, misapplied, destroyed, and placed beyond the reach of plaintiff all of said property, they did in furtherance of said scheme and conspiracy actually waste and destroy all of plaintiff securities, and in consequence they are each and all liable for the payment of plaintiff's said debt, for the reason all of said property so wasted, destroyed, and placed beyond the reach of plaintiff was in value largely in excess of the plaintiff's said debt.

It was further alleged that there was deposited with the Houston Bank certain properties, including certain Fort Bend County Road Bonds, upon which the plaintiff held its lien, to be held by said bank for the benefit of the plaintiff, and that said bank wrongfully permitted said securities to be withdrawn, diverted, and appropriated to other purposes and for the benefit of others.

It was further alleged that defendants Scronce, Baughman, Hertford, and the Good Roads Gravel Company were and are totally insolvent, and that plaintiff will be unable to realize its debt from the properties of said defendants; that at the time of the appointment of the receiver the defendants R. S. Simmons, C. E. Scronce, and J. L. Baughman were the sole and only directors of said Good Roads Gravel Company, and that the defendant R. S. Simmons was at such time and is still indebted to Good Roads Gravel Company in the sum of $37,500 on his unpaid subscription for capital stock of said company which has been delivered to him, and for this reason, independent of all other acts, trespasses, and conversions heretofore alleged, the defendant Simmons became and is liable to plaintiff for the payment of said $7,000 note.

The plaintiff's prayer was that it have judgment against the defendants C. E. Scronce and J. L. Baughman as principals and makers of said $7,000 note, and against the defendant Houston National Exchange Bank of Houston as the guarantor thereof, in the amount of the principal, interest, and attorney fees due on said $7,000 note, and for a foreclosure of the plaintiff's mortgage liens on all of said Ft. Bend County Bonds, and the proceeds thereof in the hands of any and all of said defendants, for judgment against all of said defendants for its debt, and for a foreclosure of all of its liens as against all of the same, and also for judgment rescinding the sale by the said defendant Houston National Exchange Bank of said $7,000 note to the plaintiff, and for damages in the amount, principal, and interest and collection fees due upon said note, or, in the alternative, for the amount of said $7,000 so paid by the plaintiff to said defendant Houston National Exchange Bank, with 6 per cent. interest thereon from September 13, 1913; for judgment against all of said defendants for the waste, conversion, and dissipation of the property of said Good Roads Gravel Company, a corporation, and for a foreclosure of its liens upon all of said property, and also for all sums of money realized, collected, and appropriated by said defendants in said pretended receivership proceedings of the gravel property and other assets of said Good Roads Gravel Company, a corporation, and for the value of all of said Ft. Bend County Bonds and all proceeds of the 90,000 cubic yards gravel contract aforesaid, and of the J. D. Cameron work upon the roads of precinct No. 4 of Ft. Bend county, Tex., so received and converted by the defendants as aforesaid, and for judgment against the defendants, respectively, jointly, and severally, for all moneys, and the property and the value thereof converted by them, respectively, and that they each be required to disclose, account for, and to pay into the registry of the court all such property, moneys, proceeds, etc., and the value thereof, according to their respective liabilities as hereinbefore alleged.

That the defendant stockholders and directors in said gravel company be required to account for and to pay into the registry of the court the unpaid par value of their respective holdings of capital stock in said company, and for judgment against them, respectively, therefor, and for judgment against the American Surety Company of New York on its said two bonds in the sum of the plaintiff's debt, interest, and collection fees as hereinbefore alleged, and for damages and waste, conversion, and devastation of

the plaintiff's securities and collaterals, and for judgment against W. E. Bridge in the sum of $10,000 therefor, and for conversion of all personal property, and that all defendants be required to disclose and account for all the transactions had by them with either of said pretended receivers, and for judgment against J. Mattern for the amount of plaintiff's debt, interest, and collection fees thereon, and for judgment against the partners of said partnership, Good Roads Gravel Company, and the signers, indorsers, and guarantors of said notes, and all parties assuming and guaranteeing payment of said notes, for the principal, interest, and collection fees of the plaintiff's debt, with foreclosure of plaintiff's lien, collaterals, and securities as against all defendants, and that all rights and priorities involved between all parties be settled and determined in this cause, and that all other litigation pending between any of the parties hereto and said pretended receivership proceedings be stayed (in the event said pretended receivership proceedings shall be held valid) until the determination of this cause, all parties thereto being parties herein, and for cost of suit.

Plaintiff further prays for all other further and additional relief of every kind and character, whether specially set forth herein or not, as may be meet and proper to do full justice to the plaintiff in every aspect of the case, and to which plaintiff may show itself entitled either in law or equity.

The defendant T. F. Barding filed answer, admitting as true the allegations of the plaintiff's petition, except the allegation that he received money or property from the Good Roads Gravel Company, its receiver, or from any other source, upon the indebtedness owing to him by said gravel company, which said allegation he denied. And by way of cross-action he complains of the defendants R. S. Simmons, Good Roads Gravel Company, J. Mattern, W. E. Richards, C. E. Scronce, J. L. Baughman, Commonwealth Trust Company, and the American Surety Company of New York, and for cause of action he adopts the allegations and prayers contained in the plaintiff's petition, and also adopts the allegations of fact as to all defendants, with the exception of the First State Bank of Columbus, Tex., and as contained in the cross-action filed by said First State Bank.

He alleged further that C. E. Scronce and J. L. Baughman, while doing business under the firm name of Good Roads Gravel Company, as alleged by the plaintiff, made, executed, and delivered to W. J. Wray, T. F. Barding, and A. C. Pegg, in consideration for valuable services performed for them, their certain promissory note for the sum of $3,000, dated September 6, 1913, payable on or before eight months after its date, which said note was transferred to him, and which is now his property, wherefore the said Scronce and Baughman and the Good Roads Gravel Company are obligated to pay him the sum of $3,000, together with interest due thereon; that all liens, pledges, collateral, and securities of all kinds existing as securities for the payment of the $7,000 note, are liens, pledges, and collaterals to secure the payment of said $3,000 note, subject only to the prior rights of the plaintiff; that defendants W. E. Richards, Commonwealth Trust Company, and R. S. Simmons have converted to their own use said securities, pledges, etc., and did procure the appointment of a receiver in the manner alleged by the plaintiff, who together with the American Surety Company of New York in this receivership did unlawfully take possession of and convert to their own use practically all the assets of said gravel company. His prayer was for judgment against all the defendants, except the Columbus Bank, for the sum due on said $3,000 note, with a foreclosure of his liens, pledges, and collaterals, etc., against all of said defendants.

The Houston Bank demurred generally and specially to the allegations in the petition of the plaintiff bank, and also to the allegations in the cross-action of the defendant T. F. Barding. It denied generally the allegations of both of said parties and specially pleaded:

"That neither the sale of said note to plaintiff, or the guaranty of the payment thereof, or the representations contained in the letter dated September 10, 1913, upon which plaintiff alleges it relied in purchasing the note, were the acts of this defendant, or performed in its behalf or by its authority; that if any one purported to act on behalf of this defendant in performing any of said acts, which, however, is expressly denied, such acts, or any of them, were the unauthorized and individual acts of the person acting, and not of this defendant, nor has this defendant received the benefit of or ever ratified such act or acts, or any of the transactions set out in plaintiff's petition, nor were such acts performed in the due course of this defendant's business; that this defendant had no knowledge of the sale of said note to plaintiff or of any of the alleged transactions and circumstances and agreements in reference thereto until long after the due date of said note."

That as a matter of fact the plaintiff bank had actual and constructive notice of the fact that in selling said $7,000 note and in making the representations and guaranty contained in the letter of September 10, 1913, J. W. Hertford was acting in his individual capacity and not for or in the interest of the Houston Bank; that Hertford had no authority from it to sell, rediscount and discount commercial paper, nor was he authorized to bind it by representations as to the solvency of C. E. Scronce and J. L. Baughman, or either of them, and that in the doing of all of said acts he was acting in his individual capacity, and not for or in behalf of the Houston Bank; that it never in writ-

ing or otherwise at any time guaranteed the payment of the $7,000 note, or ratified the act of Hertford in so doing.

It pleads the two-year statutes of limitation in bar of appellant's right to recover against it, and says that more than two years elapsed from the time the plaintiff discovered the truth with relation to the matters and things complained of by it and the filing of its suit against this defendant, to wit, July 6, 1917. It specially denies that it ever at any time received any benefit from the sale of said note by Hertford to the plaintiff bank, or that there was ever deposited with it any road bonds of Ft. Bend county, or any other property, pledges, or collateral to be held by it for the purpose of securing the payment of said note, or any part thereof. It specially denied each and every wrong charged against it, and pleaded estoppel, as will be more clearly shown hereinafter.

The defendant American Surety Company of New York answered plaintiff's petition and defendant Barding's cross-action by special demurrers in the nature of pleas of misjoinder of parties and causes of action, and that from the allegations of the petitions it appears that the receivership of the Good Roads Gravel Company is still pending in the district court of Colorado county, Tex.; that no final accounting therein has been had as to the acts of the receiver appointed therein, and that therefore plaintiff and defendant Barding are not entitled to litigate at this time and in this cause the matters set up as against this defendant in this matter, and for this reason prays that said cause of action against it be abated and dismissed. It also pleaded a general demurrer, various special exceptions, general denial, and special answers to said pleadings.

The defendant J. Mattern answered the petition of the plaintiff and cross-action of defendant Barding by special demurrers in the nature of pleas of misjoinder of parties and causes of action, substantially as did the American Surety Company of New York. He also pleaded a general demurrer, some 40 or more special exceptions, general denial, and special answers to said pleadings.

Defendant Mrs. Sophie Bridge, executrix of the will of W. E. Bridge, who died after the institution of this suit, answered by general demurrer and special exception to the allegation of the plaintiff's petition, and to all allegations contained in any cross-petition in so far as relates to the acts and things done by her deceased husband, W. E. Bridge. She also pleaded a general denial to all of such allegations.

The plaintiff bank having dismissed its suit against the defendant First State Bank of Columbus, Tex., said defendant Columbus Bank filed its cross-petition, asking for affirmative relief.

As no appeal has been made from the judg-ment disposing of the other defendants or other parties to this suit, the nature of whose answers have not been stated, we deem it unnecessary to make further mention of them.

The foregoing statement has been made by us in an effort to condense the allegations of the numerous and lengthy petitions, cross-petitions, supplemental petitions, answers, and supplemental answers of 12 or more of the several parties to this suit, covering 214 pages of the transcript, and we hope that it is sufficient to present the issues presented by this appeal.

On the 13th day of September, 1920, the demurrers and exceptions of the several parties came on for hearing. Upon such hearing the court found that none of the matters assailing the receivership, as set forth in the plaintiff's fourth amended petition, could be litigated in this cause, and thereupon entered an order as follows:

"All matters in this suit are dismissed, with the exception of the plaintiff's cause of action against the makers of the notes sued on, J. W. Hertford, W. E. Richards, the Good Roads Gravel Company, and the Houston National Exchange Bank, and the action of T. F. Barding against the makers of the note by him sued upon, and the Good Roads Gravel Company. All of said dismissals are to be without prejudice to said parties to prosecute their dismissed causes of action in any other way or court. But the action of T. F. Barding against the defendants, Scronce, Baughman, and Good Roads Gravel Company, named in his first amended answer and cross-bill, is not dismissed, but is to be heard with the other matters."

The demurrers, general and special, as well as all special exceptions, having been disposed of, and the cause having been submitted to the court upon its merits, without the intervention of a jury, judgment was rendered, dismissing the defendants J. Mattern, the First State Bank of Columbus, the American Surety Company of New York and W. E. Bridge and Mrs. Sophie Bridge, executrix, and all other defendants, except the defendants C. E. Scronce, J. L. Baughman, J. W. Hertford, and Good Roads Gravel Company, and adjudging that the plaintiff, Cameron Bank, shall recover from the said Scronce, Baughman, Hertford, and Good Roads Gravel Company the sum of $11,775, with interest thereon at the rate of 8 per cent., interest from date of the judgment until paid; and it further adjudged that deed of trust lien executed by the Good Roads Gravel Company, C. E. Scronce, and J. L. Baughman upon certain properties therein described be fixed, established, and foreclosed upon all of said property for the satisfaction and payment of said judgment.

Judgment was also rendered in favor of defendant T. F. Barding for the sum of $4,468 against C. E. Scronce, J. L. Baughman, and Good Roads Gravel Company, Incorporated,

jointly and severally, and for a foreclosure of his mortgage lien upon all of said property in the judgment described, said lien to be secondary to the lien of the plaintiff, Cameron Bank. The judgment so rendered also contains the following recitals:

"It further appearing to the court that all of said property is now held and has been disposed of in the receivership proceedings in said court in cause No. 7982 on the docket of this court, styled J. Mattern v. Good Roads Gravel Company, and in consequence no order of sale is decreed or ordered as to said property, but the said plaintiff and said Barding may present their respective judgments herein rendered to the court in said receivership cause for allowance and classification.

"It further appearing to the court that the plaintiff is not entitled to recover against the defendant the Houston National Exchange Bank, it is therefore, ordered, adjudged, and decreed by the court that the plaintiff take nothing by its action against the said defendant Houston National Exchange Bank, and that said defendant go hence without day and recover of, from, and against the plaintiff all costs by it in this behalf expended, for all of which it may have its execution."

From so much of the judgment so rendered in favor of the Houston Bank, the American Surety Company of New York, J. Mattern, Mrs. Sophie Bridge, executrix, and the First State Bank of Columbus, the Cameron Bank and T. F. Barding have appealed.

It is shown that J. W. Hertford, cashier of the Houston Bank, and Oxsheer Smith of the Cameron Bank were intimate personal friends, and had been such for many years; that J. W. Hertford wrote the letter of date September 10, 1913, pleaded by appellant, which has been copied herein, and that in reply thereto Oxsheer Smith, cashier of the Cameron Bank, wrote the following letter:

"Sept. 11, 1913.

"Mr. J. W. Hertford, Cashier, Houston National Exchange Bank, Houston, Texas—Dear Mr. Hertford: We are in receipt of yours of 10th, inclosing note of C. E. Scronce and J. L. Baughman $7,000, and we are pleased to credit your account with a like amount.

"Your letter read with a small smile. We care little for the pedigree of the makers of the note. If you say it is all right, we are satisfied. If you have any more short-time maturities that you know are good and a man can get a living rate out of them I shall be glad to have them. I don't want very many though.

"Our balance with you ($96,000) is not an indication of what we have with the other fellows. We have some paper not yet matured, but have entered Easy Street and know that we have unloaded rather at the reserve city banks expense. I am only a country banker, but imagine you are now at the tightest time, and I want to do my part in assisting my friends. We have just as little at other reserve points as we can get along with and you are the only account we have in South Texas.

"We hold a cash forfeit to guarantee the sale of the Peoples land as soon as the title is accepted. You can depend upon it being taken care of at maturity. You hold it in the form of a note of myself and Mr. Sampson, and we hold the deed of trust and all papers on the land here.

"With very best wishes, we remain,
"Yours very truly,
"Oxsheer Smith, Cashier."

By assignments 1 to 19a, inclusive, of the Cameron Bank, except No. 4, it is in effect insisted that the court erred in refusing to render judgment in favor of the Cameron Bank against the Houston Bank for the following reasons: (1) That by reason of the fact that Hertford was the cashier of the Houston Bank at the time he wrote the letter of September 10, 1913, and made the sale of the $7,000 note, the Houston Bank was chargeable with Hertford's knowledge, and was therefore bound by his acts, representations, and guaranties; (2) that the Houston Bank was liable for Hertford's acts, representations, and guaranties by ratification, and by accepting benefits of his acts; (3) that the Houston Bank was liable on Hertford's personal guaranty made in his letter of September 10, 1913, because of its acceptance of benefits arising from the transaction, in that it got $7,000 of the money of the Cameron Bank and retained the same; and (4) that the Houston Bank had knowingly permitted certain securities pledged to the payment of said $7,000 note, which had been deposited with it, to be withdrawn and dissipated.

By the fourth assignment it is insisted that the court erred in finding that the cause of action asserted by the Cameron Bank against the Houston Bank was barred by the two-year statute of limitation pleaded by the Houston Bank; and by the remaining assignments of said bank it is insisted that the court erred in sustaining the demurrers of the American Surety Company of New York, J. Mattern, Mrs. W. E. Bridge, and others, and dismissing them from this suit, for the reason that it was shown that by and through the receivership proceedings the securities, etc., held by said bank had been dissipated.

Believing as we do that the material findings of fact by the trial court, as well as his conclusions of law, are amply supported by the evidence and law, we adopt the same as our own and copy them in full as follows:

### "Findings of Fact.

"(1) I find that the defendant J. W. Hertford became the cashier of the Houston Bank about four years before the happening of the matters out of which this suit arose; and that he was the cashier of the Houston Bank during the month of September, 1913, and remained in such position until the 31st day of January, 1914, when he severed his connection and secured a position with another Trust Company in Houston.

"(2) About September 6th, C. E. Scronce and J. L. Baughman approached Hertford in an endeavor to have him finance their partnership—which consisted of themselves—in the operation of certain gravel leases and contracts; that Hertford informed them that the Houston Bank would not make the loan, but that he might place it elsewhere. Thereupon Scronce and Baughman executed the note sued upon—introduced in evidence—to themselves, indorsed same, and delivered it to defendant Hertford, with the understanding that he was to negotiate it, and was to receive personally for such service the sum of $2,000 by way of commission, the remainder to be paid to the makers or placed to their credit.

"(3) In pursuance of this agreement, the evidence of security offered by the makers, to wit, certain deed of trust on some gravel leases in Colorado county, and an agreement by defendant W. E. Richards to hold certain Ft. Bend County bonds, and the proceeds of a gravel contract as security, were delivered to defendant Hertford, who had the same examined by one Monta J. Moore, an attorney, and personally paid Moore for same, and Moore was not then or ever the attorney for the Houston bank.

"(4) I find that the Houston Bank never owned or held, or had any interest in the $7,000 note, and never advanced any money or credit thereon; that the Houston Bank never sold, rediscounted, or delivered the $7,000 note to plaintiff, but that same was sold to plaintiff by defendant Hertford, acting in his individual capacity, as hereafter set out.

"(5) I find that defendant Hertford had no authority from the Houston Bank to write the letter of September 10, 1913, to plaintiff, which accompanied the $7,000 note, and contained the offer to sell same to plaintiff. I find that defendant Hertford did not purport to act for the Houston Bank in said letter, but acted for himself and in his own interest, and his letter plainly so states.

"(6) I find that it is the universal custom that when banks rediscount between themselves they transfer the rediscounted securities by indorsement and delivery; that both plaintiff and the Houston Bank were national banks, and this custom was known to plaintiff; and that the $7,000 note did not bear the indorsement of the Houston Bank.

"(7) Defendant Hertford, in said letter of September 10, 1913, individually guaranteed the payment of said $7,000 note, and he did not set, or purport to act, for the Houston Bank as its agent or cashier' in so doing.

"(8) I find that plaintiff purchased the $7,000 note relying upon the representations contained in Hertford's letter of September 9, 1913; and in response to his request to send remittance or advice of credit therefor the plaintiff, by letter dated September 11, 1913, addressed to 'J. W. Hertford, Cashier,' chose the latter method, and authorized Hertford to charge its account in the Houston Bank $7,000.

"(9) That Hertford received said letter on September 12, 1913, and upon its authority made out a 'charge slip' on September 13, 1913, for $7,000 against the plaintiff's account in the Houston Bank, and this charge was entered upon the books of the Houston Bank, by one of its bookkeepers, from such charge slip.

"(10) That, after receiving plaintiff's letter of September 11, 1913, Hertford caused to be withdrawn on September 12 and 13, 1913, the proceeds of this transaction, $7,000, and caused $5,100 of same to be placed to the credit of J. L. Baughman for Scronce & Baughman and retained the balance, in which Scronce & Baughman acquiesced, $1,900 for himself as commission.

"(11) That Hertford withdrew the proceeds of the sale of the $7,000 by means of cashier's checks, which he directed an inferior employee to issue and he signed, and that he had several made to F. Kener, who was a fictitious person, in order that his connection with this transaction might not become known to the Houston Bank, doing this to hide his personal interest in this transaction.

"(12) I find that the Houston Bank did not take, apply, or appropriate any of the plaintiff's $7,000, but that the mere bookkeeping credit so caused to be entered by Hertford was immediately absorbed by the checks aggregating $7,000; that the Houston Bank was merely the medium used in passing this $7,000 from plaintiff to the makers of said $7,000 note and Hertford; that the Houston Bank did not and has not received any benefit, gain, or advantage by reason thereof, or because of the sale of the $7,000 note.

"(13) I find that no officer or employee of the Houston Bank knew anything concerning the $7,000, or of Hertford's statement about same, or anything about the transaction connected with it until after said note became due, some time in March or April, 1914; that nothing concerning said note appeared on the books, records, or files of the Houston Bank, except an entry, simply charging plaintiff with $7,000 without showing what said charge was for, and entries charging the Houston Bank with $7,000 for cashier's checks, without showing their purpose; that Hertford alone knew of the transaction; that he was personally interested therein for his own benefit, and it was necessary for him to conceal his knowledge in order to consummate his deal, and he did conceal the transaction in its entirety.

"(14) I find that Hertford acquired his knowledge of the whole of this transaction while acting personally in a matter in which he was personally interested; that when he acquired his information he was not engaged in his principal's business, or acting in furtherance thereof, but in fact deceiving and perpetrating a fraud upon the Houston Bank and in hostility to the interest of the Houston Bank.

"(15) I find that the representations contained in Hertford's letter to plaintiff of September 9, 1913, were false and untrue; that they were material, and induced plaintiff to purchase the $7,000 note, but I further find, as set out in finding 4, that they were made by Hertford individually, and not as agent for, or as the act of, the Houston Bank, and that plaintiff gave credit to them as Hertford's personal statements, and that no officer, director, or employee other than Hertford knew of said representations, or that they had been made, until some time in March or April, 1914.

"(16) I find that the first notice or knowledge of this transaction the Houston Bank had was in March or April, 1914, and that it at once disclaimed all knowledge of the matter,

stated to plaintiff that it was Hertford's personal transaction about which the Houston Bank knew nothing, repudiated his acts, and denied all liability of any kind in connection therewith.

"(17) With reference to the contention that the Houston Bank was the holder of proceeds of a gravel contract, Ft. Bend county road bonds, and deeds of trust as security for the $7,000 note, I find that no bonds or other proceeds of any gravel contract, or any other funds to pay, or securities for, the $7,000 note were ever deposited with the Houston Bank; nor did said Houston Bank have any notice or knowledge of the existence of such escrow or collateral agreements. Hertford knew of an agreement by which certain securities were to be held by the defendant W. E. Richards, but did not know of the existence of the escrow agreement by which bonds were to be deposited in the Houston Bank until long after the consummation of the sale of the $7,000 note to plaintiff. I find further that no Ft. Bend County road bonds were ever the property of the parties to such escrow agreement, but belong apparently to J. H. P. Davis & Sons, bankers, of Richmond, Tex., and passed through the Houston Bank for collection, in due course of trade, on some Cincinnati bank or bond house; that, at the time, the Houston Bank knew of no agreement affecting them, and the parties to such agreements appear never to have had title to said bonds.

"(18) I find that when the $7,000 note became due in March, 1914, and was called to the attention of the Houston Bank, it at once denied liability thereon, denied it had received any benefits or securities therefor, or had any knowledge, but claimed then that all of said transactions were those of J. W. Hertford personally. Thereafter plaintiff dealt with Hertford, who was then working for the security company; sent the $7,000 note to him, and he returned it with a letter, sending three months interest and asking an extension. No extension was formally given, but the interest so paid was credited on the note, and plaintiff forebore to sue; that thereafter Hertford procured and plaintiff accepted, as additional security, the $8,250 note introduced in evidence, of the Good Roads Gravel Company, which had succeeded the partnership of Scronce & Baughman. Some time in the fall of 1914 plaintiff turned over the $7,000 note to the Houston Bank, which was still its correspondent, requesting the latter to aid plaintiff in collecting said note from the makers, defendants Scronce & Baughman and W. E. Richards. The Houston Bank did attempt to collect same for plaintiff, but was unsuccessful, and advised that receivership or bankruptcy proceedings be resorted to, as all parties concerned were worthless. In July, 1915, at plaintiff's request, the note for $7,000, and all papers in connection therewith, were forwarded to plaintiff's agent, Oxsheer Smith, at Columbus, Tex.

"(19) I find that the Houston Bank never concealed any facts from plaintiff, nor did it make any false or fraudulent statements to plaintiff regarding said note or its connection therewith. Further, that plaintiff did not exercise any diligence in investigating the matter, and the exercise of reasonable diligence would

236 S.W.—11

have disclosed at any time during the transaction, from its inception, the falsity of Hertford's representations, the absence of any security for the $7,000 note, and all other facts necessary to plaintiff's cause of action.

"(20) I find that plaintiff actually knew in March or April, 1914, that the Houston Bank repudiated Hertford's acts and denied any responsibility therefor, and that plaintiff had information from the Houston Bank and from the file of letters and papers turned over to plaintiff by the defendant Hertford, as early as the spring of 1915, of the falsity of Hertford's representations contained in his letter of September 8, 1913.

"(21) The Houston Bank was not made a party to this suit, which was filed August 31, 1914, until the filing of plaintiff's Third Amended Original Petition on July 6, 1917.

"Conclusions of Law.

"In view of the foregoing findings of fact, I hold as a matter of law:

[1] "First. As to the contract of guaranty, that since the Houston Bank never owned or held the $7,000 note, it could not, through the acts of Hertford, or otherwise, guarantee the payment thereof, since a national bank cannot lend its credit or become the guarantor of the obligation of another, unless it own or have an interest in the obligation guaranteed, and that such an act, if attempted, would be ultra vires and void, particularly since the evidence further discloses that the Houston Bank received no benefits therefrom.

"Authorities: The principle is well supported in the following cases that a National Bank has no power to lend its credit to any person, or to become a guarantor of the obligation of another, except upon obligations which it owns or has an interest in, and which it is necessary to guarantee in order to transfer, and that such an act is not binding on the bank by estoppel, but is wholly void. California National Bank v. Kennedy, 167 U. S. 367, 17 Sup. Ct. 831; s. c., 42 L. Ed. 198; McCormick v. Market National Bank, 165 U. S. 538, 17 Sup. Ct. 433, 41 L. Ed. 817; First National Bank v. American National Bank, 173 Mo. 153, 72 S. W. 1061; Fidelity & Deposit Co. v. National Bank of Commerce, 48 Tex. Civ. App. 301, 106 S. W. 782; Groos v. Brewster, 55 S. W. 591.

[2-4] "Second. I hold as a matter of law that Hertford was not acting as the agent of the Houston Bank in this transaction, and that plaintiff had notice thereof; that the acts of Hertford in selling the $7,000 note to plaintiff and making the various representations concerning same, were never ratified by the Houston Bank, nor were any benefits accepted from such acts. The act of Hertford, the agent, in passing the proceeds of this note through the Houston Bank could not ratify his previously unauthorized acts, first, because an agent cannot, by his acts, ratify his previously unauthorized acts; second, because ratification must be had with full knowledge of all material facts, and the Houston Bank had no knowledge of any of the material facts at the time such proceeds passed through its books.

"Authorities: That ratification, in order to be effectual, must be made with the full knowledge on the part of the principal of all the

material facts. Morse on Banks and Banking, § 101, and authorities there cited.

[5] "Third. I hold that the knowledge of Hertford was not imputable to the Houston Bank, since his knowledge was acquired while acting in his own personal interest, and not in the transaction of his principal's business, and since his interest was hostile to that of his principal, and it was necessary for him to conceal the same in order to consummate this transaction for his personal benefit. The knowledge of an agent acquired in such manner is not imputable to the principal, for the reason that the law will not presume that the agent will make disclosures where his interest lies in concealing his knowledge from his principal.

"The following authorities will support this principle that notice will not be chargeable to the principal where the agent, though nominally acting as such, is really acting in his own or another's interest or adversely to his principal. The theory upon which the principal is chargeable with notice to the agent is that there is a presumption that the agent will communicate such knowledge to his principal. Where, however, the agent is acting in his own or another's interest, or adversely to his principal, the reason for the rule fails, and hence the rule fails, and the law will not presume that he will in such case communicate to the principal facts which he is interested in concealing.

"Authorities: Teagarden v. Godley Lbr. Co., 105 Tex. 616, 154 S. W. 973; Kauffman & Runge v. Robey, 60 Tex. 308, 48 Am. Rep. 264; Innerarity v. Bank, 139 Mass. 332, 52 Am. Rep. 710; Frenkel v. Hudson, 82 Ala. 158, 2 South. 758, 60 Am. Rep. 736; Dillaway v. Butler, 135 Mass. 479; Gunster v. Scranton Power Co., 181 Pa. 327, 37 Atl. 550, 59 Am. St. Rep. 650; Amarillo Nat. Bank v. Harrell et al., 159 S. W. 858; Hawkins v. First Nat. Bank, 175 S. W. 163; Guaranty State Bank v. Bland et al., 189 S. W. 546; Texas Loan Agency v. Taylor, 88 Tex. 49, 29 S. W. 1057; Harrington v. McFarland, 1 Tex. Civ. App. 289, 21 S. W. 116; Brookhouse v. Union Pub. Co., 73 N. H. 368, 62 Atl. 219, 2 L. R. A. (N. S.) 993, 111 Am. St. Rep. 623, 6 Ann. Cas. 675; Baker v. Mineral Springs Co., 112 Va. 280, 71 S. E. 626, L. R. A. 1917F, 303.

"Fourth. I hold as a matter of law that the Houston Bank never received any benefit from any of the transactions sued upon, and has never ratified or adopted Hertford's acts in relation thereto, and it is undisputed that Hertford had no previous express authority to do the things complained of. I therefore hold that the Houston Bank never became liable for Hertford's act in creating his personal contract guaranty, nor did it ever become liable by express authority or subsequent ratification or the acceptance of benefits for those of his acts sounding in fraud and deceit.

"Fifth. I further hold as a matter of law that the Houston Bank never became liable by reason of the various escrow agreements, as set out in findings of fact No. ——, since, first, it had no notice or knowledge of such agreements; second, the securities therein mentioned were never deposited with the Houston Bank for the benefit of the $7,000 note; and, third, because it appears that the parties to said escrow agreements never, in fact, had title to said securities so that they could have pledged the same.

[6-8] "Sixth. I hold that plaintiff's cause of action, so far as it sounds in fraud and deceit, and for the conversion of securities, is barred by the two-years statute of limitation, more than two years having elapsed between the time plaintiff knew, or by the exercise of reasonable diligence could have known, the existence of the facts necessary to its cause of action, and the date when the Houston Bank was made a party defendant, and I hold that there is no evidence of fraudulent concealment on the part of the Houston Bank, nor of reasonable diligence in investigating on the part of the plaintiff bank such as would toll the statute of limitation.

"Authorities: That the two-year statute of limitation applies to acts for fraud and deceit. Coleman v. Ebeling, 138 S. W. 199; Bostick v. Heard, 164 S. W. 34.

"'It is the law in this state that neither fraud alone, nor ignorance of its existence, will prevent the statute of limitations from running. The ignorance which affects such a result must be attended with such concealment of the fraud as will prevent its discovery by the exercise of reasonable diligence.' Prosser v. Bank, 134 S. W. 781; Calhoun v. Burton, 64 Tex. 513.

"'The mere fact that one has confidence in another is not sufficient to excuse the lack of diligence in investigating.' Standford v. Finks, 45 Tex. Civ. App. 30, 99 S. W. 452.

"Seventh. I conclude upon the whole case that there can be no recovery against the defendant Houston National Exchange Bank."

We think the foregoing findings of fact and conclusions of law render unnecessary a detailed or further discussion of the various assignments of either of the appellants.

We have reached the conclusion that no reversible error has been pointed out by any of the assignments of the appellants; hence it becomes our duty to affirm the judgment, and it is accordingly so done.

Affirmed.